### No. 11,224.

THE STATE EX REL. HENRY L. GARLAND, JR., CUSTODIAN OF NOTARIAL RECORDS, VS. CHARLES J. THEARD.

The original jurisdiction of inferior courts must be construed with reference to Art. 11 of the Constitution, which ordains adequate remedy in the courts for all legal rights.

State ex rel. Custodian Notarial Records vs. Theard.

The plaintiff in this action, the importance of the issues involved, and the character of the suit are within the jurisdiction of this court.

It is made the duty of the custodian of notarial records to collect and safely keep in his possession the records of notaries who have ceased to be such.

An acknowledgment can not be invoked to maintain the custody of public records which the statute provides shall be delivered to the custodian of notarial records.

A notary's records, after his term of office, are a part of the notarial records and should be delivered to the State to be safely kept for the convenience of the public.

APPEAL from the Civil District Court for the Parish of Orleans. *Ellis, J.*

The Relator *in propria persona* and Appellant.

*W. S. Parkerson* for the Respondent and Appellee.

The opinion of the court was delivered by

BREAUX, J. The relator, custodian of notarial records for the parish of Orleans, sues the defendant for notarial records, consisting of three bound volumes and other copies.

He sues in the name of the State, with the consent of the Attorney General.

No objection is taken to the form of the action.

He avers that they were the notarial records of the late Hon. Paul Emile Theard, late a notary, and prays that they be delivered to the State of Louisiana.

The defendant in his answer alleges that he is a notary public, that these records were at his father's death, and since, in his custody as notary; that he was associated with and a full partner of the late Paul E. Theard, in the exercise of the profession of notary, as well as in the practice of law.

The respondent avers that the notarial department of their office was particularly and almost exclusively under his control.

That the acts passed in their office were executed before either notary indifferently.

That he wrote much the greater number of the acts.

That the notarial work of the office was performed interchangeably—that is, at times one notary acted for the other.

That the records were as much his property as they were deceased.

That they are safely and carefully kept, and contain valuable information concerning the business of his clients, and almost daily he has use for them.

It is admitted that the facts alleged are true.

The record comes to us without a note of evidence or statement of facts.

The case is submitted on the allegations of facts; one of these allegations, on the part of plaintiff, is that these records should be placed in the public office where they belong, " as well as a matter of public convenience as in consideration of their greater safety from destruction or loss."

On the part of the defendant it is claimed that there is a central office for the preservation of notarial records, such as the law contemplates, or that in the rooms now used notarial " records are not safely kept or carefully preserved."

The defendant and appellee argues that the appeal should be dismissed because the interest of the plaintiff in the matter in dispute does not exceed $2000. The defendant also questioned the jurisdiction of the District Court.

The plaintiff and appellant has filed his affidavit in this court that by law he is entitled to fees for copies of all notarial acts in his possession, as custodian of notarial records; that his right to obtain possession of such notarial records, where lawfully entitled thereto, exceeds the value of $2000; that he makes the affidavit to establish his appealable interest and to bring this case to the Supreme Court; that it is a test case and the rights involved exceed $2000. The District Court maintained its jurisdiction.

Judgment was pronounced for the defendant dismissing plaintiff's suit at his costs.

*Jurisdiction:* This suit is not brought to recover fees of office; the amount of fees which the custodian of the central office may recover for copies does not represent the jurisdictional amount, though it may be incidentally considered in determining the question of jurisdiction. The possession of public records is involved, which the defendant alleges contain information of value.

They are claimed by public officers; each contends that they are part of the archives of his office.

The State has an interest in these records, also the general public.

They are the evidence of title—a perpetual memorial of important facts. Their loss or destruction is not appreciable in money.

The custody and control of public records and security in title to property are among the most important concerns of government.

Their value can not be increased by a pecuniary standard.

In reference to another right, that of voting, this court said:

"It would be absurd to say that the Constitution intended to deprive courts of jurisdiction of all matters not susceptible of distinct pecuniary valuation except those expressly mentioned." State ex rel. Mayor vs. Judge, 35 An. 639.

If the cause is not within the jurisdiction of the District Court, no court has jurisdiction.

The question presented would have to remain undetermined, though the Constitution ordains that all courts shall be open and justice administered without unreasonable delay.

Another affidavit would not make the importance of the issue more manifest.

It is questionable if any one could take ar oath to fix a pecuniary standard of value.

The public interests are involved, in comparison with which the fees of the officer are as naught.

This court has in exceptional cases exercised jurisdiction, although the matter in controversy was not appreciable in money or did not consist in a money demand within the minimum limit. Rowley vs. Rowley, 19 La. 340.

The *mens legislatoris:* Prior to the enactment of any law upon the subject, the governor, as resulting from the duty incumbent upon him to care for and preserve the public property and records when a notary died or resigned, appointed another notary and gave him charge of the vacant office in the commission, and it necessarily followed of the record. Kelly vs. Gilly, 5 An. 534.

The act was justified *summa necessitate* by the immediate urgency of the occasion and a due regard to the public convenience.

Tne act of March 12, 1857, relative to the notaries for Orleans parish vacated the office of each and all notaries previously appointed, and provided for the appointment of not less than forty notaries.

It also provided that in making these appointments also in the event of the death, resignation or removal of any of the appointees under the act, "the governor shall, by special order, under the seal of the State, designate the notary to whose custody shall be consigned the records of the notary or notaries so dead, resigned or removed."

Under that law, many of the records were placed in the custody of other notaries than those before whom the acts were executed.

Under Act 147 of 1867, Sec. 1, a central office of notarial records was established in the city of New Orleans for the purpose of preserving the records of notaries "who have ceased to be such by death, removal or otherwise, whose records are not *now* in the custody of some other notary."

Under the second section of that act: It is the duty of the custodian of notarial records to collect together and safely keep in his possesion the records of all notaries in the parish of Orleans "who shall have ceased to be such either by death, removal or otherwise, except such records as *are already* in the custody of other notaries; he shall keep his office in a fire-proof building, which it shall be the duty of the common council to provide; he shall classify these records for public convenience." (Italics are ours.)

We have seen that notarial records at the time of the enactment of the statute organizing a central office had been placed in the custody of certain notaries.

The words " now " and " already " of the statute of 1867 apply to the records anterior to the act, and not to those subsequent.

They have a distinct meaning at the present time and do not apply to records of notaries appointed under subsequent laws.

*Admission:* The relator has made admissions at variance with the allegations of his petition.

He sues to have records placed in the public office "where they belong as well as a matter of public convenience as in consideration of their greater safety from destruction or loss."

The defendant states facts in denial which are admitted as true.

If the issues were between the relator exclusively and the defendant the admissions would bind him. As to the State a principle applies which the admissions do not affect. The enforcement of a law can not be arrested as against the State by an admission that certain provisions of the law are disregarded.

Whatever negligence or acts of omission there may have been on the part of the common council in not securing an office "in a fire-proof building, which it shall be the duty of the common council of New Orleans to provide," and any other neglect must be remedied.

The official responsibility resting upon an officer in charge of valuable records is such that he can not consistently, with the imperative puty devolving upon him, permit them to continue exposed to loss.

His shortcoming in this respect does not relieve others, or offer good grounds of defence not to deliver public records.

The clerk of court, for instance, as the custodian of public records, can not excuse his neglect in not taking possession of public documents and papers by the admission that his office is unsafe.

He has his remedy relieving him from the necessity of such admissions.

An admission can not be invoked to maintain a condition in violation of laws prohibitive in their effect.

In Graves vs. Alsop, 25 Pacific Reporter, it is held " that parties to an action can not properly stipulate what the law is that is to govern their case, and that courts should not regard such stipulations when made."

*The notarial records:* It is not disputed that the notarial acts claimed were passed before the late Mr. Theard.

In his brief, the defendant states that he does not contend that a notary might possess himself of the records of other notaries, by forming a partnership with one or more of them. This eliminates the question of partnership right to these records.

We understand the defendant's contention upon this point now to be, that, in view of the mutuality of interests in these records, the confidential business relations between him and his late father, and the fact that the notarial department of their office was more particularly and almost exclusively under his control, he has the right to retain the possession and control of the records claimed.

Notaries are public officers invested with certain powers and subject to certain responsibilities. The power and the responsibility are personal; that is, as to the State, it is not shared with any other officer.

Their acts are their separate independent acts as officers, and their records are not subject to any claims of ownership as against the statute, which provides that they shall in certain event be collected and kept in the central office. This was the condition of the appointment. It must be read as part of the commission under which he qualified and acted.

No exception can be made. The law includes all records. The late notary had no permanent proprietary interest in these records. They are not now subject to any equitable or other claim.

In State ex rel. A. Hero, Jr., vs. Laresche, 24 An. 148, this court

briefly says: " His being a notary public does not entitle him to any property in or control over the records of a deceased notary."

The relator has admitted that these records are in the custody of the defendant and that they belong in reality to defendant as much as to the deceased himself.

The admission is general by relator and by counsel for defendant that all the facts stated by defendant or plaintiff are true.

If the relator were held strictly to this admission, the court could not decree that these records are the property of the defendant and that he is their legal custodian.

We quote the following from a decision of this court to which we have above referred:

" An acknowledgment that one has sold his right of inheritance in a future succession can not be set up as an estoppel, because all contracts of such a nature are expressly forbidden, and can neither confer rights nor impose obligations."

Again, an acknowledgment, however authentic, " that title to real estate has been finally adjudicated upon by a justice of the peace could not be set up as an estoppel, because it is legally impossible that such final decision has been legitimately made, as justices of the peace have no jurisdiction over title to real estate."

. Conceding therefore that relator has admitted all that is claimed, it by no means follows that these public records are cwned by the defendant or that he is the legal custodian.

It is ordered, adjudged and decreed that the judgment of the lower court is reversed, and that plaintiff now have judgment compelling the defendant to deliver said records to the State of Louisiana through the said custodian of records and that the defendant pay the costs of both courts.