No. 13,132.

## STATE OF LOUISIANA VS. GEORGE H. GRANDJEAN.

51 1099
52 1611

### SYLLABUS.

1.  The Civil District Court has jurisdiction in a suit between the State and a: "Recorder," to test the title of the latter to the office held by him.
2.  The State, through the Attorney General, may bring suit, under the "Intrusion Act," against a *de facto* officer, without joining as plaintiff any claimant to the office in question, and without there having been any appointment made to fill the vacant office into which such officer is charged with having intruded.
3.  Art. 157 of the Constitution, authorizing the Governor to fill, by appointment, vacancies in the judicial offices of the parish of Orleans and city of· New Orleans. applies to vacancies in the office of Recorder, which, as now constituted, is a judicial office within the meaning of the article.

O  N APPEAL from the Civil District Court, for the Parish of Orleans. *Ellis, J.*

*M. J. Cunninghanm,* Attorney General, (*Frank D. Chretien* and *E. Howard McCaleb,* of counsel,) for Plaintiff and Appellant.

*James J. McLoughlin,* Assistant City Attorney, and *Samuel L. Gilmore,* City Attorney, for Defendant, Appellee.

Argued and submitted April 8, 1899.
Opinion handed down April 17, 1899.
Rehearing refused May 15, 1899.

The opinion of the court was delivered by

MONROE, J. The office of Recorder of the Second District of New Orleans became vacant, in December, 1898, by the death of Henry Bezou, the incumbent; and, in January, 1899, the City Council of New Orleans elected the defendant to fill the vacancy. The State now brings suit, through the Attorney General, and alleges that the action of the Council in the premises was *ultra vires,* unconstitutional and null, and that the occupation of said office by said Grandjean is an unlawful intrusion and usurpation, and that he should be excluded and said office declared vacant, to be filled, under Article 157 of the Constitiution, by appointment by the Governor.

Defendant excepted that the court was without jurisdiction, and that the petition disclosed no cause of action, and, answering, avers that he was legally elected and is entitled to hold the office in question and discharge the duties thereof.

1. The exception to jurisdiction is based upon the proposition, that the Constitution of 1898 conferred on the Civil District Court no power to determine the issues presented.

*Article 133* reads: "The Civil District Court shall have * * * " exclusive jurisdiction in suits * * * involving title * * * " to office or other public position, or civil or political rights; and in " all other cases except as hereinafter provided," etc. No sufficient reason is suggested why this comprehensive grant of jurisdiction should not be considered sufficient for the purposes of the instant case, nor is it suggested that any other court would have jurisdiction in the premises.

2. The exception of "no cause of action" is based, as appears from the argument of counsel, upon the proposition that, because the Governor has made no appointment, and no one is claiming the office,

save the defendant, the Attorney General has no right to bring the suit.

The suit is brought under Act 156 of 1868, known as "The Intrusion Act," R. S., 2593, et seq:, which, as far as it is necessary to quote it, reads:

"* * * That an action by petition may be brought before the "proper District Court, or parish court, by the District Attorney, or " District Attorney pro tempore, and, for the parish of Orleans, by the " Attorney General, or any other person interested, in the name of the "State, upon his own information or upon the information of any. "private party, against the party or parties offending, in the following cases:

First—"When any person shall usurp, intrude into, or unlawfully "hold or exercise any public office or franchise within this State;. "* * * Sec. 4, provides: That when an action shall be brought by "virtue of * * * this act by the * * * Attorney General "* * * * on the relation or information of any person interested,. "the name of such person shall be joined with the State as plaintiff."

And there are other provisions as to the judgment which may be rendered. The language conferring the authority upon the Attorney General, however, to bring the suit, is specific to the effect that it may be brought by him "or any other person interested," and all the other provisions of the statute harmonize with the idea thus conveyed, that the suit may be brought by the Attorney General alone in cases where there is no "other person interested;" though when it is brought by him upon the information of a person interested, the name of such person must be joined with that of the State.

The decision in the case of Guillotte vs. Poincy, 41st Ann., 333, to which we are referred, has no bearing upon the question at issue. In that case it was claimed that Guillotte, who was in possession of the office and who had proceeded by way of injunction to quiet his title, should have proceeded under the Intrusion Act to oust the plaintiff, who was not in possession. And the court simply held that in a proceeding under that act, between a party claiming and a party in possession, the defendant must necessarily be the officer de facto.

The defense on the merits presents the single question, does the office of recorder fall within the meaning of Article 157 of the Constitution? That article reads as follows, to-wit:

"Art. 157. Vacancies occurring from any cause in the judicial " offices of the parish of Orleans or city of New Orleans shall be-

·" filled by appointment by the Governor, with the advice and consent " of the Senate, for the unexpired term."

One of the propositions of the defense is that this article is controlled by Article 319, which reads:

"Art. 319. The electors of the city of New Orleans and of any ·" political corporation which may be established within the territory " now, or which may hereafter be, embraced within the corporate " limits of said city, shall have the right to choose the public officers, " who shall be charged with the exercise of the police power, and with " the administration of the affairs of said corporation in whole or in ·" part."

Conceding (*arguendo*) that the recorder is a city officer, the proposition of defendant's counsel would have greater force if Article 157 referred only to "the judicial officers of the parish of Orleans"; but, it will be observed, that the article in question also provides that the ·Governor shall fill, by appointment, vacancies in "the judicial offices of the * * * city of New Orleans," from which it follows that, if the office of recorder is a judicial office, whether of the parish or city, and it is held, under Article 319, that a vacancy in such office may be filled otherwise than by appointment by the Governor, Article 157 is striken with nullity; although that article could have been inserted in the Constitution for no other purpose than to provide for the filling of vacancies in judicial offices in the parish of Orleans or city of New Orleans, since it deals with and mentions nothing else, whilst Article ·319 does not deal with or mention vacancies at all.

The most elementary rule of construction requires that effect shall, if possible, be given to all the provisions of a law, and that different provisions upon the same subject matter shall be construed together in such a way as to reconcile and harmonize all, with the sacrifice of none. Construing the two articles in question agreeably to this rule, it is evident that Article 319 must be regarded as *pro tanto* modified by Article 157, which is to be regarded as though it were an exception ·embodied in the text of Article 319.

The remainder of the original question, then, is, is the office of "recorder" a judicial office of either the parish of Orleans or city of New Orleans?

Law dictionaries and books of reference concur in the general proposition that recorders are judicial officers, but, after all, the determination of the question, in any given case, depends upon the law

creating the particular office, and the functions and duties imposed upon that particular officer. There was a time when the destinies of the people of New Orleans were presided over by recorders in the different municipalities, who were executive officers to whom certain judicial functions were attached, and if a case of that kind were here presented it might be a question whether Article 157 was intended to apply—where the office was not wholly judicial, but where, perhaps, the most important functions were executive and *quasi* legislative.

But such is not the case with which we have to deal.

The learned judge *a quo* argues with great force and effect in his able opinion that the office of recorder, under the existing Constitution and statute law, is a municipal and a statutory office, and from these premises he deduces that it can not fall within the meaning of Article 157 of the Constitution. He does not suggest that the duties imposed upon the recorders are not judicial, or that any other than judicial duties are imposed upon that officer.

Suppose it be conceded, then, that the office is a municipal office. It will hardly be denied that the title "City of New Orleans" describes the municipal corporation known by that name, and it can not be denied that, under Article 157, vacancies in the judicial offices of the "City of New Orleans" are to be filled by appointment by the Governor.

And, again, suppose it be conceded that the office, under the Constitution, is to be regarded as a statutory, rather than a constitutional office, in what way does that affect the question under consideration? Most of our Constitutions, in the past, have left the question of the number of courts to be established, and the jurisdiction to be conferred upon each, in a large measure, to the General Assembly; so, that all the courts in the State, with the exception of the Supreme Court, were statutory courts—thus:

Constitution of 1812.

"Art. IV, Sec. 1. The judiciary power shall be vested in a Supreme "Court and inferior courts. * * *

"Sec. 4. The legislature is authorized to establish such inferior "courts as may be convenient to the administration of justice."

But it certainly could not be claimed that tribunals performing no other than judicial functions, thus provided for, in articles collected together under the title "Judiciary Department," by the framers of the Constitution themselves, did not become part of the judiciary

system of the State, merely because it was left to the legislature to establish and disestablish them.

Considering the decisions of this court, to which the defendant's counsel refers as supporting his position upon this branch of the case, they deal mainly with the question of amotion, impeachment, and removal, and it would seem only necessary to say that the framers of our Constitutions have not, generally, provided that officers shall be removed, in the same manner in which they are appointed, or by the same authority. The two things have, therefore, no necessary connection with each other.

In the case of State ex rel. Whitaker vs. Adams, 46 Ann., 830, the question was whether the recorder could be suspended and impeached by the city authorities, and a distinction was found to have been made by the legislature between the "removal for cause after trial," as provided for in the Constitution, and the *"impeachment"* authorized by the City Charter, and this court said:

"We are of opinion that the legislature was justified in making the " distinction it did."

In the case at bar no such distinction is possible, for, whilst it may be advisable, and is frequently the case, that more than one method should be provided by which obnoxious public servants may be required to make room for more efficient ones, there can be, in the nature of things, but one way of filling a vacancy in a particular office, though, no doubt, different methods may be provided for different offices.

The case of State ex rel. Bezou, Recorder, vs. Judge, etc., 50th Ann., 655, seems to be cited as establishing the proposition that the office of recorder, under the Constitution of 1879, was statutory, and not constitutional, and from this premise the learned counsel for the defendant argues, as follows, to-wit:

"If the recorder is a judicial officer, he must be an officer of the " State of Louisiana, and if he is an officer of the State of Louisiana, " he can not be an officer of the city of New Orleans."

Unfortunately for this argument, and aside from other considerations which might be suggested, the Constitution of the State contemplates that there shall be, or may be, judicial officers of the city of New Orleans, for it says so, in terms—and provides that vacancies in such offices shall be filled by appointment by the Governor. The final suggestion that even the Constitution can not deprive the people of

New Orleans of the right to fill such vacancies, can hardly be entertained.

For these reasons it is ordered, adjudged and decreed, that the judgment appealed from be annulled, avoided and reversed. And it is now ordered, adjudged and decreed, that there be judgment in favor of the plaintiff, the State of Louisiana, and against the defendant, George II. Grandjean, adjudging said defendant guilty of usurping, intruding into and unlawfully holding and exercising the office of Recorder of the Second Recorder's Court of the City of New Orleans, and that he be excluded therefrom, and that said office be decreed vacant. Said defendant to pay costs in both courts.