DASTUGUE v. COHEN

—

(January 13, 1930.   Opinion and Decree.)
(January 27, 1930.   Rehearing Refused.)
(March 10, 1930.   Writ of Certiorari and
Review Refused by Supreme Court.)

—

Edward Rightor, Thos. E. Furlow and P. E. Edrington, of New Orleans, attorneys for plaintiff, appellee.

Guion & Upton and K. C. Barranger, of New Orleans, attorneys for defendant, appellant.

HIGGINS, J.   There are eleven suits involved in this litigation and they were consolidated for the purpose of trial and decision.   Plaintiff sought and obtained an

injunction restraining defendant from interfering with him in the exercise of his duties as a member of the Republican State Central Committee and defendant has appealed.

The petition alleges that plaintiff was a de facto member of the Republican State Central Committee for the seventh ward of the parish of Orleans, having been elected at a meeting of the committee on January 31, 1928, for a full term of 'four years; that he qualified as such and is exercising and performing the duties of such a committeeman; that the defendant is claiming he is entitled to be a member of the State committee and to exercise the duties and functions thereof; and that plaintiff will suffer irreparable injury unless defendant is restrained and prohibited from interfering with him in the performance of his duties "until such time as the disputed right of said office shall have been judicially determined in proper legal proceedings." "That the Republican State Central Committee is, under the laws of the State, and particularly Act 97 of 1922, a part of the government and the members thereof are officers of the law; and the functions of the said Committee and members thereof are set forth in the said act and particularly Sections 25, 29, 30 and 31 thereof; and all of the said duties and functions are exercised by petitioner."

Defendant filed an exception to the jurisdiction of the court ratione materiae and an exception of no cause of action. In his answer, defendant denies that plaintiff is a member of the committee and performing any of the duties and functions as a member thereof but alleges that he (defendant) is the duly elected member of the said committee. The exceptions were overruled and on the merits judgment was rendered in favor of plaintiff enjoining defendant

from interfering with him in the performance of his duties and functions "until such time as the disputed right to the said office shall have been judicially determined in proper legal proceedings."

Counsel for defendant has urged the exceptions before this court and argues in support of the exception to the jurisdiction, that courts have no jurisdiction over any controversy with respect to membership of such committee, being purely a political matter, and no pecuniary interest involved; and in support of the exception of no cause of action argues that a member of the Republican State Central Committee is not a public officer entitled to such injunctive relief.

We will first take up the question of jurisdiction.

Section 35, Article 7 of the Constitution of 1921 reads as follows:

"* * * The District Courts, except in the Parish of Orleans, shall have original jurisdiction in all civil matters regardless of the amount in dispute, or the fund to be distributed, concurrently, however, with justices of the peace in matters where the amount in dispute, or fund to be distributed, is less than one hundred dollars, exclusive of interest; and in all cases where the title to real estate, or the right to office or other public position, or civil or political rights are involved, and in all cases where no specific amount is in contest, except as may be otherwise provided in this Constitution. District Courts shall be courts of record, except in cases where they have concurrent jurisdiction with justices of the peace. * * *"

And section 81 of Article 7 of the Constitution of 1921 reads as follows:

"The Civil District Court for the Parish of Orleans is hereby vested with the same exclusive original civil jurisdiction as that of District Courts throughout the State, as fixed by this Constitution at the time

of its adoption, except such as may be vested by it in other courts in the City of New Orleans. * * * "

Under Article 109 of the Constitution of 1879, the district courts had "original jurisdiction in all civil matters where the amount in dispute shall exceed $50.00, exclusive of interest." Nothing was said about cases in which no pecuniary amount was involved. Many controversies in which no pecuniary amount was involved but in which rights of the litigants were important found their way into the district courts, and in some of them the defendants excepted to the jurisdiction ratione materiae. Jurisdiction was uniformly maintained, on the equitable principle that every right must have a remedy. This principle was incorporated into the Constitution of 1868 as Article X, into the Constitution of 1879 as Article XI, into the Constitutions of 1898 and 1913 as Article VI, and into the Constitution of 1921 as Section 6 of Article I, as follows:

"All Courts shall be open, and every person for injury done him in his rights, lands, goods, person or reputation shall have adequate remedy by due process of law and justice administered without denial, partiality or unreasonable delay."

The same principle is expressed in Article 21 of the Civil Code:

"In all civil matters, where there is no express law, the Judge is bound to proceed and decide according to equity. To decide equitably, an appeal is to be made to natural law and reason, or received usages, where positive law is silent."

In Crescent City Gas Light Company v. New Orleans Gas Light Company (1875) 27 La. Ann. 138, the plaintiff prayed for an injunction to prevent the defendant and its officers and directors from asserting any right or claim to make and vend illuminating gas in the city of New Orleans, from and after the date of expiration of the charter of the defendant. In overruling defendant's exception of no cause of action, the court said:

"The authors of our laws have not seen fit to prescribe forms for every legal demand, and they have not catalogued in the Code of Practice all the actions that may be brought in our Courts; it is, perhaps, well that they have not done so, lest by the omission of a form, substantial relief in some case might be denied a person whose rights have been invaded."

The syllabus reads:

"The plaintiff has shown an injury, and if there is no express law giving a remedy, it can appeal to the equity power of the Court for redress. Revised Code, Article 21."

In State ex rel. Mayor v. Judge (1883) 55 La. Ann. 637, citizens and voters of the town of Donaldsonville, alleging that the law required an election to be held at a certain time, that the mayor and town council were required by law to issue a proclamation, give notice and perform other duties with respect thereto, that the mayor and council were neglecting to perform their duties, that petitioners were entitled to vote at said election and that, if the defendants were not required to perform said duties, petitioners would be deprived of their right, applied to the district court for a writ of mandamus. The defendants pleaded to the jurisdiction of the court ratione materiae, because there was no amount in dispute exceeding $50, exclusive of interest, as required by Article 109 of the Constitution of 1879. The exception was overruled, and the defendants applied to the Supreme Court for writs of certiorari and prohibition. In denying the application, the court said:

"If the District Court has not jurisdiction to enforce the rights claimed by the plaintiffs in the suit under consideration, no Court has such jurisdiction and we would have presented the case of a well recognized legal right without a remedy. Art. 11 of the Constitution provides that, 'all Courts shall be open, and every person, for injury done him in his rights, lands, goods, person or reputation, shall have adequate remedy by due process of law and justice administered without denial or unreasonable delay.' In construing the constitutional definitions of the original jurisdiction of Courts, we must be guided by this Article; and when we find that, under our system of law, there has existed an ancient and established remedy for the enforcement of a recognized legal right, which is the only adequate remedy, we will not construe the jurisdictional provisions of the Constitution as having effect to take away such remedy and to leave the right remedies, by any mere implication, however strong."

In State ex rel. Garland v. Theard (1893) 45 Ann. 680, the plaintiff, as custodian of notarial records, sued for the possession of the notarial records of the deceased father of the defendant. In ruling adversely on defendant's plea to the jurisdiction ratione materiae, the court said:

"If the cause is not within the jurisdiction of the District Court, no Court has jurisdiction. The question presented would have to remain undetermined, though the Constitution ordains that all Courts shall be open and justice administered without unreasonable delay."

and in the syllabus:

"The original jurisdiction of inferior Courts must be construed with reference to Article 11 of the Constitution, which ordains adequate remedy in the Courts for all legal rights."

In State v. Rost (1895) 47 Ann. 53, the jurisdiction of the district court, in an injunction suit by one alleging himself to be the de facto police juror in actual occupancy of the office against another alleged to be attempting to intrude in to the office and usurp the functions thereof, was questioned. It was held:

"That under Article 11 of the Constitution of the State, any incumbent of a public office is entitled to appeal to the Courts to be maintained in the possession of his office pending the judicial determination of the right and title to said office."

In State ex rel. Mouton et al. v. Read (1897) 49 Ann. 1535, it was held that the district court had jurisdiction of a contested election suit, the court saying:

"We have had in previous cases this question of the limitation of jurisdiction to controversies purely pecuniary in their character. Under the constitutional provision that the Courts shall be open for the assertion of the rights of the citizens, we are not able to reach the conclusion that the jurisdictional test of amount shall be so construed as to close the Courts to all suitors asserting rights of an important character, though not susceptible of pecuniary estimate." Citing Constitution 1879, Article 11; State v. Judge, 35 Ann. 637; Rowley v. Rowley, 19 Ann. 557; State v. Theard, 45 Ann. 681; Scott v. President of Police Jury, 46 Ann. 278.

In Guillotte v. Poincy (1889) 41 Ann. 333, the leading case of the kind now before the court, the decision was founded on the equitable principle involved and the necessity for orderly administration of public affairs.

The framers of the Constitution of 1898 made more specific in Article 109 the matters in which the district courts should have jurisdiction, and this provision was incorporated in substantially the same form in the Constitution of 1921, as section 35 of Article VII. It is there provided that the district courts "shall have jurisdiction in all civil matters regardless of the

amount in dispute * * * and in all cases where * * * the right to office, or other public position, or civil or political rights are involved, and in all cases where no specific amount is in contest, except as may be otherwise provided in this Constitution."

The number and variety of cases coming within the jurisdiction of the district courts are inconceivable. We shall refer to only a few of them.

The district court has jurisdiction of a suit against a sheriff by a citizen seeking to inspect and copy lists of persons who have paid their poll taxes, since Article 109 of the Constitution (1898) confers upon district courts jurisdiction over all matters, wherein civil and political rights are in controversy, regardless of the amount involved. Marsh v. Sanders, (1903) 110 La. 726, 34 So. 752.

In Bunkie Brick Works, Ltd., v. Police Jury, (1905) 113 La. 1062, 37 So. 970, and in other cases submitted with it on appeal, the plaintiffs sought to have declared illegal the assessment for taxation of certain improvement constructed after January 1st. The defendants excepted to the jurisdiction ratione materiae on the ground that the amount of taxes involved did not exceed the sum of $50. It appeared that the taxes involved in one case were in excess of $50 and in the other three cases less than $50. The court said:

"We think that the district court has jurisdiction, regardless of the amount of taxes in controversy, because civil rights were involved and, moreover, the defendants in the suit represented the state and the parish. See article 109, Constitution 1898."

In Reynolds v. Carroll (1905) 114 La. 610, 38 So. 470, the plaintiff sought to be declared elected alderman of the town of Zwolle. The district judge sustained a plea to the jurisdiction ratione materiae, because plaintiff's petition did not set forth that the office was one of trust or emolument, or that it had any value, or that any fault had been committed. In granting mandamus to the district judge to reinstate and try the case, the court said:

"The District Court has jurisdiction in all cases where title to office is involved, 'or other public position, even where no specific amount is in contest." Citing Constitution, Article 109; McClenny v. Webb, (1905) 114 La. 779, 38 So. 558, decided same day as Reynolds case.

In City of Lake Charles v. Lake Charles Railway L. & W. Company (1918) 144 La. 217, 80 So. 260, the city sued for an injunction against the defendant to prevent it from charging a greater fare than five cents on its street cars in violation of an ordinance of the city. The defendant pleaded to the jurisdiction ratione materiae, and in ruling upon the plea, the court said, at page 223:

"The plea to the jurisdiction of the Court is founded upon the fact that the plaintiff did not sue for a sum of money, nor for a revocation of the railway franchise. Our answer is that, by the terms of Article 109 of the Constitution, the District Courts have jurisdiction of 'all other cases where no specific amount is in contest, except as otherwise provided in this Constitution'; and it does not appear to be otherwise provided for a suit for this character."

It has been held that, because civil and political rights were involved, the district courts had jurisdiction of the following suits, under Article 109 of the Constitution of 1898 and section 35 of Article VII of the Constitution of 1921, quoted above: By a father against a parish school board to compel it to admit to a school for white children his child who has been excluded therefrom as having negro blood, Oberly v.

School Board (1918) 142 La. 788, 77 So. 600; to strike from the registration rolls the name of a person alleged to be illegally registered, Aubert v. Burns (1918) 142 La. 895, 77 So. 782; to mandamus a city board of health to change the designation of plaintiff's ancestors and other relatives in the records of vital statistics from "colored" to "white," Allnet et al. v. Board of Health (1924) 155 La. 758, 99 So. 589; for injunction by a clerk of court against the police jury to prevent it from having the books of his office audited, Guillory v. The Police Jury (1924) 1 La. App. 195; to mandamus a parish school board to issue a permit for plaintiff's son to attend a school in another parish, State ex rel. Ferroux v. School Board (1925) 3 La. App. 2.

In State ex rel. Trainor v. St. Paul (1903) 111 La. 713, 35 So. 838, relator, alleging that he was a candidate for member of the Democratic State Central Committee from one of the wards of the parish of Orleans, brought suit in the court a qua against the Democratic Committee of the parish of Orleans and the executive committee of the Democratic State Central Committee to set aside and avoid a rule of the parish committee, providing in certain contingencies for the appointment of additional commissioners to serve at the election of members of the Democratic State Central Committee. Expressing the view that the appointment and service of such additional commissioners might conceivably vitiate the election, the court ordered the judge of the district court to grant the injunction sought, and said:

"Relator, a candidate for election, as member of the central committee from his ward, has the right to an injunction to restrain the appointment of additional commissioners under said rule."

If the courts have jurisdiction to protect by injunction a mere candidate for member of a state central committee, with no more at stake than the opportunity to be elected, on what possible theory can it be said that they have not jurisdiction to protect by injunction a de facto member of a state central committee, occupying the office and functioning under color of title?

Despite the specific and mandatory provisions of the Primary Election Law, Act No. 97 of 1922, with respect to the personnel of party committees and their election, the duties to be performed by the party committees and the interest of the public therein, defendant would have this court hold that the right to perform the duties of member of a party committee is entirely within the discretion of the committee—a purely private and political affair. If that be true, then any set of persons being or claiming to be members of a party committee can designate and recognize others as members of such committee and all of them together can go through the formalities of performing the duties legally appertaining to such committee, without interference on the part of persons legally and formally elected in strict conformity with the Primary Election Law. Thus the statute of the state which was enacted in the interest of orderly administration of elections to public office would be set as naught, and throw into chaos the matter of nominations for public office.

We are of the opinion that the district court had jurisdiction and correctly overruled the exception to its jurisdiction ratione materiae.

We will next consider whether or not membership of the committee is a public office. Act 97 of 1922 is the Primary Election Law of this state. The title reads as follows:

"To provide for calling, holding, conducting and regulating primary elections by political parties and to define the term political party; to provide for defraying expense of said primary elections; and to prescribe what violation of the provisions of this act shall be offenses and to provide penalties for same; and to repeal all laws or parts of laws in conflict herewith."

It is quite certain that members of a party committee are elected and perform their functions under the provisions of Act No. 97 of 1922, and that that act is public in its character and purpose and is not for the benefit of any political party or private interest. Without substantial observance of its mandatory provisions, there can be, no legally constituted party committee and no legal primary election and no nomination of candidates for public office. Whether or not a member of a party committee is stricti juris, a public officer seems to us of no great importance. He does hold a public position and does perform public duties, and the orderly and legal performance of those duties is of paramount public concern. If there are two groups of persons claiming to be members of a party committee and having the right to function as a party committee and the members of neither group can be protected as the de facto and functioning members of the committee pending judicial decision of the right of one or the other to the position, chaos must ensue from the efforts of both groups to perform the functions of the committee. In such circumstances persons desiring to become candidates for party nomination for office would not know with whom they might safely file their notices of candidacy and make deposits for election expenses and under whose supervision or jurisdiction, their efforts to become nominees of the party should be directed. The Secretary of State would not know, and certainly cannot

choose, which group to recognize as the party committee entitled to primary election ballots at the expense of the state. The officials of the city of New Orleans and the parishes would not know, and certainly cannot choose, which group to recognize as the party committee entitled to receive ballots, polling booths, railings and ballot boxes for holding a primary election, and entitled to have commissioners for holding the election under its call, who are to be paid by the city or the parish. The party nominees would not be determined in any way, with the result that the party holding the primary election may be without a candidate in the general election, because the successful candidate in the party primary is the party candidate in the general election. Such uncertainty and confusion might result in complete failure of the primary election system.

The duties of party committees and their members are public and the committees are the instrumentalities of the state. They are created by law which prescribed their duties and powers.

In State ex rel. Labauve v. Michel (1908) 121 La. 374, 46 So. 430, Labauve alleging that he had been nominated by a party convention, sought to mandamus the Secretary of State to place his name on the ballots at the general election; the Secretary of State rejoined that, insofar as it authorized political parties to make nominations by the convention method, Act 152 of 1898 had been repealed by the Primary Election Law, Act 49 of 1906, and that plaintiff had not been legally nominated at all and was not entitled to have his name on the ballots. Plaintiff claimed that Act 49 was unconstitutional, and that, therefore, Act 152, was still in force and effect.

At the beginning of the opinion, the court

482

stressed the necessity for the orderly determination of what names should be printed on the ballots, and the public interest therein. Plaintiff claimed Act 49 was unconstitutional because of the provision of section 13 that the state bear a part of the expenses of primary elections. The court said:

"A sufficient answer to this ground is that, beyond all question, the primary is part of the election machinery of the State, and that, therefore, for the State to pay a part of its expense, is not to apply public funds to a mere private purpose, but simply to defray a legitimate State expense."

In the case of Reynaud v. Songy et al., 11 La. App. —, plaintiff, as a member of the finance committee of the police jury of the parish of St. John the Baptist sought an injunction against defendant from interfering with him in the performance and discharge of his duties. Plaintiff was not required to take any oath or furnish bond. This court held "in our opinion the injunction should issue except for one fatal fact, and that is that it is manifest, that plaintiff is not in possession of the office." In short this court was of the opinion that a member of the finance committee of the police jury was such a public officer entitled to an injunction to protect him in his office from interference until title to the office could be legally determined. The only reason the court was unable to grant the injunction was because plaintiff had permitted himself to be divested of the office before seeking the injunction.

We are, therefore, of the opinion that a member of the Republican State Central Committee is a public officer entitled to invoke an injunction to protect him in the occupancy of his office until the disputed title to the office can be determined by proper judicial proceedings. The ex-

ception of no cause of action was properly overruled.

On the merits of the case, we are of the opinion that the evidence shows that plaintiff is incumbent in office under color of title and is being interfered with in the performance and discharge of his duties by the defendant.

The principle enunciated in the leading case of Guillotte v. Poincy (1880) 41 La. Ann. 333, and followed in the cases of Goldman v. Gillespie, 45 La. Ann. 680; State v. Grandjean, 51 La. Ann. 1099, 25 So. 940; Sanders v. Emmer, 115 La. 590, 39 So. 631; Jackson v. Powell, 119 La. 883, 44 So. 689; Gleason v. Wisdom, 120 La. 632, 45 So. 530; Gleason v. Wisdom, 5 Orl. App. 179; State v. Turner,152 La. 828, 94 So. 411; Saint v. Irion, 165 La. 1062, 116 So. 549, are applicable here. That principle is that a de facto official actually occupying the office and performing the functions thereof will be protected by injunction in the occupancy of his office until such time as the disputed right to the office shall have been determined in proper judicial proceedings.

In Guillotte v. Poincy, supra, the leading case on this subject, the court said:

"This doctrine is in the interest of social peace and order, and conforms to the object and policy of the law in all remedial provisions for the settlement of disputed rights, which always respect and maintain the status quo until the controversy shall be settled in orderly course of judicial procedure."

On the question of irreparable injury, we refer to Gleason v. Wisdom, 120 La. 632, 45 So. 530, and to City of Lake Charles v. Lake Charles Ry. L. & W. Company (1918) 144 La. 217, 221, 80 So. 260, where the definition of irreparable injury is stated as follows:

"An irreparable injury is one for which the party injured cannot be compensated adequately in damages, or for which the damages cannot be measured by a pecuniary standard."

Considering the citation in defendant's brief: Haup v. Schmidt, 70 Ind. App. 260, merely holds that in Indiana equity will not intervene to protect one in a public office, because only political rights are involved. The decision is inapplicable here, unless we ignore the Guillotte case and those that follow it, and also the provisions of our Constitution vesting in our courts jurisdiction "of all cases where * * * the right to office, or other public position, or civil or political rights are involved, and in all cases where no specific amount is in contest." Constitution, art. VII, sections 35 and 81. 32 C. J. 41 (par. 20).

In Roussel v. Gornier, 129 La. 930, 57 So. 272, the court held only that the matter involved was within the discretion of the party committee, and the courts would not interfere.

People v. McWeeney, 259 Ill. 161, like the Haup case, is opposed to our jurisprudence and the provisions of our Constitution vesting jurisdiction in the courts.

State v. Ardoin, 136 La. 1085, 68 So. 133, holds as shown by the first paragraph of the syllabus by the court:

"A democratic parish executive committeeman is not an officer, within the meaning of the provision in Section 3 of Act No. 135 of 1898, 'that no person holding any office under the state or under any parish or municipality therein shall be competent to hold the office of jury commissioner'."

Clearly the decision was limited to whether or not a member of a committee of a political party was an officer within the meaning of the statute cited.

Attorney General v. Drahan, 169 Mass. 534, merely construed the statutory law of Massachusetts. Again we are controlled by our own laws and the construction placed on them by our Supreme Court. The same is true of Brundage, Attorney General v. Brady, 302 Ill. 576, and of Heiskel v. Ledgerwood, 234 S. W. 1001.

In State ex rel. Burke et al. v. Foster, 111 La. 939, 36 So. 32, the court held that the statute then in effect placed with the board of contests full authority in matters of party nominations, but the decision has no application to the facts of the present case.

In Reid v. Brunot, 153 La. 490, 96 So. 43, the suit was brought by one not claiming to have been nominated and hence not coming within the provisions of the statute authorizing such suit, and for that reason plaintiff could not prevail.

Finally, in Dill v. Lowery, 166 La. 645, 117 So. 748, and Goff v. Barranco, 166 La. 647, 117 So. 749, the Supreme Court declined to grant writs of mandamus to the district courts to try the case, because (p. 646):

"The case might have been disposed of with reasonable promptness by appeal to the Court of Appeal. The case presents no such extraordinary circumstances as would justify us in reviewing it in the exercise of our extraordinary jurisdiction."

The court observed, that there was no emoluments attached to the office of committeeman, and that such case was appealable to the Court of Appeal.

For the reasons assigned, we are of the opinion that the injunction was properly issued, and the judgment appealed from is, therefore, affirmed.