Dear Ms. Sutton:
We are in receipt of your request for an Attorney General's Opinion on behalf of Mary Thibaut Rives, who was recently elected as a member of the Republican Parish Executive Committee of St. Tammany Parish. You seek our opinion on the following questions:
 (1) Can the newly-elected members of the PEC ignore the provisions of the By-laws of that PEC, which were duly adopted and filed with the Clerk of Court pursuant to LSA-R.S. 18:444 E?
 (2) Can a person elected to a PEC under LSA-R.S. 18:444 take the oath of office prior to certification of their election results by the Secretary of State under LSA-R.S. 18:513 A?
 (3) Given the facts outlined in this opinion request, wherein five of the ten newly-elected members of the PEC meet the day after the election, without prior notice and in violation of the PEC's By-laws, can the five members:
 a. Validly hold the organizational meeting pursuant to LSA-R.S. 18:444 C(1)?
 b. Constitute a quorum for purposes of LSA-R.S. 18:444 C(1)?
c. Vote to vacate the by-laws of the PEC?
d. Elect officers of the PEC?
 (4) Are PEC members "public officers" such that they are subject to the provisions of LSA-R.S. 42:2, 42:5 and 42:7?
Before specifically answering your questions, we find it necessary to make a general statement about this matter. It is our opinion that the actions of the five newly-elected members of the St. Tammany Republican Parish Executive Committee explained in your opinion request are not valid and without effect for several reasons:
 (1) The newly elected members were not "elected" until the results of the election were official. See, Jory v. Arnette, 360 So.2d 921, 924
(La.App. 3 Cir. 1978).
 (2) A majority of the newly elected members are required to constitute a quorum to transact business, and five out the ten newly-elected members does not constitute a quorum. LSA-R.S. 18:444 C(1).
The invalid actions of the five newly-elected members, as per your opinion request, included:
 (1) The swearing-in on March 13, 1996, prior to the promulgation of the election returns;
 (2) The conduction of a meeting on March 13, 1996, without proper notice, in non-compliance with the By-laws of the Committee, and in violation of R.S. 18:444 C;
 (3) The action taken at said meeting, including but not limited to the repeal of the By-laws, selection of officers, and the money transactions; and
 (4) The meeting of March 21, 1996 also failed to be conducted in accordance with law, R.S. 18:444
C and E, and therefore, any action taken at said meeting was also invalid.
Now we will proceed to specifically address your questions.
Question No. 1
The rules and regulations of any legislative body or administrative body continue in effect despite changes in the composition of the group. Scott v. NatchitochesParish Democratic Executive Committee, 121 So.2d 766,768-769 (La.App. 2 Cir. 1960). Generally speaking, the rules and regulations of a PEC must continue in effect, until altered or rescinded.
Therefore, our answer to your first question is no, a newly-elected PEC may not ignore the by-laws of the Committee. However, when legally organized, a newly-elected PEC may vote to alter or rescind the by-laws in accordance with R.S.18:444 E.
Question No. 2
Under no circumstances is a candidate considered elected until the results are official. Jory, supra. LSA-R.S. 18:513
A(4) provides for the Secretary of State to certify the name of the person elected to the political party parish executive committee chairman within 30 days after the general election. R.S. 18:444 C requires the newly-elected members of a PEC to meet, take office and organize within 40 days after their election.
Therefore, our answer to your second question is also no, a newly-elected PEC member may not take the oath of office prior to certification of the election results. As explained inJory, supra, the results of an election would be inclusive if an election contest suit were filed, thereby, making the results of the primary election final only after a definitive judgment in the election contest suit. Results of an election are not official until promulgation of the election returns in accordance with LSA-R.S. 18:574 and 575.
Question No. 3
As we have stated earlier, it is our opinion that the actions of the five newly-elected members are invalid, as follows:
 a. R.S. 18:444 C(1) provides for the organizational meeting within 40 days after their election. Our office has previously opined in Attorney General Opinion No. 87-703 that where there may be multiple dates upon which candidates may have been elected, "their election" means the latest date upon which any candidate for membership to a PEC may have been elected. We take this opinion one step further by incorporating case law which holds that "a candidate is not elected until the results are official". Jory, 360 So.2d at 924. The results of the election were not certified by the Secretary of State until March 19, 1996, seven days after the March 12th meeting of the five newly-elected members, and six days after the March 13th meeting.
 b. R.S. 18:444 C(1) provides also for a quorum of the Committee to conduct business, and states that a quorum is a majority of the newly elected members of the PEC. Where ten candidates were elected to the PEC, a quorum requires six of the ten members.
 c. As we stated earlier, the By-laws may be amended and repealed, but only when done so in accordance with law; i.e., a properly called meeting and a quorum present to conduct business.
 d. Again, the election of officers must be in accordance with law, R.S. 18:444 D, and the rules and regulations of the PEC.
 Question No. 4
Our answer to your final question is no, political party members are not "public officers" and therefore, not subject to the provisions of LSA-R.S. 42:2, 42:5 and 42:7. However, political parties are required to adopt rules and regulations in order to conduct business, which more than likely includes provisions for "open meetings" with proper notice.
In reaching this conclusion, we reviewed case law which is contrary to our analysis but can be distinguished as discussed herein. (Dastugue v. Cohen, 14 La.App. 475,131 So. 746 (1930), and State ex rel. Tuttle, et rel. v.Republican State Central Committee of Louisiana,192 So. 740 (1939).)
In Dastugue, the court found that the duties of party committees and their members were public, and that the committees were instrumentalities of the state because they were created by law, (Act 97 of 1922). Act No. 97 of 1922 provided for political parties to actually call, hold, conduct and regulate primary elections. Therefore, the reasoning of the decision inDastugue seems logical when you read Act 97 of 1922, which provides that "all political parties shall make all nominations for candidates for the United States Senate, Members of the House of Representatives in the Congress of the United States . . ." and so on, all the way down to city and ward officers.
Political parties today do not enjoy such power of making all candidate nominations, and our laws specifically provide for the powers of a PEC which are (1) to adopt rules and regulationsfor its government, not inconsistent with state law or the rules and regulations of the state central committee, and (2) to create any committee it deems necessary.
In Tuttle, the court again relied on Act 97 of 1922, which provided in Section 28 that the members of the State Central Committee were officers and were the governing authorities of their respective political parties, who function as a state body. We cannot rely on either Dastugue, nor Tuttle because of the simple fact that our laws have changed. The Election Code today merely provides for the recognition and election of political parties.
A political party adopts the method by which its organization is brought about, provides its own rules for its regulation and is accountable to no one except those who compose the party. The sovereign power of the state resides with the legislative, executive, and judicial departments, and it is fundamental that a public office is one which involves a delegation to an individual of some of the sovereign functions of government. Statev. Dark, 195 La. 139, 196 So. 47 (1940).
The Louisiana Election Code does not delegate the sovereign functions of government to political parties. While the code provides for the recognition, composition and election of political parties, such is necessary to avoid confusion and prevent disorder in the conduct of elections to guarantee that the members of each political party shall have the privilege of selecting the people of their choice to be voted for at the primary and general elections for public officers.
Also, constitutional law provides for freedom of association of political parties, and case law has held that states are prohibited from interfering in the internal operations of a political party unless they can show a compelling state interest for such intrusions. Eu v. San Francisco CountyDemocratic Central Committee, 489 U.S. 214,109 S.Ct. 1013, 103 L.Ed.2d 271 (1989).
Finally, we enclose for your information and review a copy of Attorney General Opinion 96-174. We hope that these 2 opinions address all of the questions with regard to the newly elected St. Tammany Parish Republican Parish Executive Committee. However, if we can be of further assistance, please advise.
Yours very truly,
 RICHARD P. IEYOUB ATTORNEY GENERAL
BY: _________________________
 ANGIE ROGERS LaPLACE Assistant Attorney General
RPI/ARL/pb
cc: Scott J. Lindsly
Enclosure
Date Received:
Date Released:
Angie Rogers LaPlace Assistant Attorney General