GOODMAN
*v.*
ALLEN.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## T. O. KEARNEY *v.* D. H. HOLMES.
## D. H. HOLMES *v.* T. O. KEARNEY.

```
6   373
45  1270
6   373
48   64
```

A clerk in a large dry goods store frequented by female customers, while ladies were in the store, engaged in a quarrel with another clerk and drew on him a revolver without there being any necessity for such violence, *Held:* that such conduct justified the employer in discharging him.

Where a party has used the process of courts for the sole purpose of vexing and harrassing the defendant, without any reasonable hope or expectation of recovering any portion of the sum claimed, such party becomes liable to the other for damages, even though the suits thus brought were merely ordinary civil suits.

APPEAL from the Second District Court of New Orleans, *Lea*, J.

The judgment of the district court was in favor of *Holmes* against *Kearney*, for two hundred and fifty dollars damages on the reconventional demand of *Holmes*.

*C. Redmond*, for the plaintiff, made the following points on the reconventional demand of *Holmes:* As to the action in damages, consolidated by consent with this, although *Holmes* has obtained a judgment for $250, we cannot bring ourselves to the conviction that our duty to the appellant requires argument thereon. We deem it sufficient to observe, that the two first suits were for damages for breach of partnership agreement; that the defendant was put under oath, and all but admitted a legal contract, though qualified by the declaration that the promise made was not positive, but conditional, on the respondent's withdrawal from business, a design which was defeated by the French Revolution. That the first suit was discontinued because defendant refused to wait the return of a commission, and that in the others defendant moved for a non-suit.

In any of these cases defendant might have introduced his evidence, and have obtained a final judgment had he thought proper to do so. He might have availed himself of his own answers to interrogatories, had he deemed them available as evidence to terminate the litigation. On this subject, we beg leave to refer the court to *Mr. Budd's* testimony, and to the extracts from *Mr. Griffith's* letters, a witness, who was in possession of the partnership agreement, but who refused to testify in a quarrel between mutual friends.

*Benjamin* and *Micou*, for defendant, contended: The plaintiff instituted four successive suits against defendant, without shadow of claim, and upon causes of action merely pretended and fictitious. To the fourth suit, defendant replied by claiming, in a separate action, damages for this malicious prosecution and annoyance. This demand was consolidated with plaintiff's suit, by consent, and tried as a reconvention.

It is impossible to discover even an excuse for the plaintiff for his repeated and pertinacious demands. The defendant had acted towards him with the greatest forbearance and liberality, and no single fact or circumstance was proved by the plaintiff tending to support his demands.

We are sure that this court can find no fault with the judgment of the court below, except that the damages awarded to the defendant are much less than he sustained; and we are confident that, if he had not refrained from demanding an amendment of the judgment in his favor, it would have been granted by this court.

The judgment of the court (*Preston*, J., dissenting in part) was pronounced by

Rost, J. The evidence in the record satisfies us that the plaintiff, so far from exercising his legitimate legal rights in his numerous suits against the defendant, has used the process of courts for the sole purpose of vexing and harrassing him, without any reasonable hope or expectation of recovering any portion of the sum claimed. The fact that he agreed to take less wages from the defendant than he was receiving in another house, has no weight with us. It may not have been optional with him to remain in that house, and he may have had many motives for making the change, besides the belief that he was to become the partner of the defendant. We are of opinion that the judgment should be affirmed in both cases.

Judgment affirmed in both cases, with costs.

Preston, J. dissenting. The plaintiff sues for five hundred dollars, alleging that he was employed by the year by the defendant as superintending clerk in a large dry goods store; that he was dismissed on the 13th of December, 1848, without cause; for which reason he claims wages to the 1st September, 1849, when he alleges his term of service was to expire, in consequence of an arrangement to become a partner of the defendant in his business.

The defendant denies that he employed him by the year, but by the month; alleges that he had sufficient cause to dismiss him, and admits that half a month's salary was due to him, which he has tendered.

The plaintiff has rendered it probable, by the testimony, that he was employed by the year, but has not furnished such conclusive proof that we should be obliged to differ with the district court even on that point. But even if he was employed by the year, the defendant has shown sufficient cause for his discharge.

The defendant kept a large dry goods store, which was much frequented by female customers. At nine o'clock in the morning, and while some ladies were actually in the store, a quarrel took place between the plaintiff and another clerk under his direction, whom he struck, and on whom he drew a revolver, compelling him to retreat, producing great confusion in the store, and frightening the ladies very much.

The plaintiff has not shown any absolute necessity for such violence, in order to protect his own person or the person or property of his employer, which alone could have justified it. Nothing would sooner and more certainly destroy the custom of a dry goods store, the resort principally of females, than a reputation for broils with deadly weapons in the very place and hour of business. Even in this place, the resort of men alone for business, if an officer of the court under our control, should, during the session of the court, resort to blows and draw a revolver on another, without an absolute necessity to protect his person from violence, we should be compelled to dismiss him for the first offence, however great the provocation.

The testimony, therefore, justifies the defendant in having discharged both the clerks; and being justified in so doing, the plaintiff was not entitled to wages afterwards, even if he had been employed by the year. The defendant tendered the wages actually due, and offered the plaintiff, as a present, five times the

amount. The money tendered still remains in court subject to his order. Judgment was, therefore, very properly rendered in favor of the defendant and for his costs, and we all concur in affirming it.

With this suit is consolidated one by *Holmes* against *Kearney* for a thousand dollars damages, in which he alleges that *Kearney* had instituted four suits against him, well knowing that he had no legal claims, but maliciously and wantonly to vex and harrass him, and to impose upon him charges, inconveniences and expenses; that he never would permit his false and pretended claims to be adjudged, but as soon as the suits came up and were called for trial, discontinued them, or suffered non-suits for the mere purpose of beginning new suits for the same pretended and false demands. He alleges that he had incurred expenses and suffered damages by the wanton conduct of the defendant to the amount of a thousand dollars, which he claims.

The rule of law is the same in relation to a claim for damages for a vexatious suit, as for a malicious prosecution. No action lies for suing a civil action, when the plaintiff fails, unless it be alleged and shown to be malicious and without probable cause. *White* v. *Dingby*, 6 Mass. Rep. 435. *Vandouzer* v. *Lenderman*, 10 John. Rep. 106. 1 Salk. Rep. 13. 1 Bos. & Pull. 205.

It requires a strong case of malice, and want of probable cause to support a suit for a malicious prosecution; because, if on the failure of every prosecution, the accuser was subjected to damages, it would entirely discourage the prosecution of real offenders. So in a suit for damages on account of vexatious civil suits, a strong case of mere malice and entire want of a cause of action ought to be shown, or parties would be deterred from entering the courts of justice, although they really believed their complaints to be just. On the contrary, our courts should be open to every person to enter without fear, if he believed he had a just complaint, however unfounded it might be.

Our late Supreme Court in the case of *Escurial* v. *Daboval*, so often before it, manifested strongly their repugnance to allow damages really suffered against a party who thought he was exercising a legal remedy; and I do not recollect in this State any successful suit for damages claimed on account of vexatious suits, where the party commenced by petition and citation alone, although it has been different where the parties resorted without cause to the extraordinary remedies of arrest, attachment, sequestration or injunction.

In England, the plaintiff who failed in his suit, was amerced in costs for his false clamor, but they embraced only what were strictly the expenses of the suit, and not the money expended by the party himself, nor compensation for his own time. It was only when knowing that he had no cause of action or complaint, and acting entirely from malice, he vexed the defendant with suits, that the plaintiff was liable to damages.

The rule is the same in our jurisprudence. Costs are allowed the defendant, if the plaintiff fails in his suit, and nothing more, if in good faith the plaintiff believed he had a cause of action. Ill-will in the commencement and prosecution of the suit, is not alone the malice contemplated by law to render the plaintiff responsible; for there is often ill-will and bad feeling in the prosecution of just suits. It is the malice which is composed of bad feeling united to a knowledge in the plaintiff himself that he has no just cause of action, which renders him responsible in damages for vexing the defendant with unfounded suits. In a word, the plaintiff must act in bad faith; for until then the doors of justice should be open to all, although their feelings may be bad, and their complaints in reality groundless.

KEARNEY
*v.*
HOLMES.

Let us apply these principles to the facts of this case, which though singular, are easily subjected to their test, so as to arrive at a just conclusion. In the first suit, *Kearney* claimed damages for the violation of an alleged verbal agreement with *Holmes* to give him an interest in his mercantile establishment as a partner, after the 1st of September, 1849, and for wages until that time. When the case was called for trial, the plaintiff's counsel was engaged in trying a suit in another court. He solicited the defendant's counsel to continue the cause, which was refused. Thereupon, the counsel testifies, he was obliged to discontinue the suit and to pay the costs. It was discontinued on the 9th of May, 1849, and by an extract of a letter from a *Mr. Griffith*, in London, dated the 27th of that month, it appears the plaintiff had been corresponding with him, in the hopes of obtaining testimony to support his suit. It is evident from the extract that he had not obtained testimony which he expected, and discontinued his suit, when forced to trial, as well without evidence as without counsel.

The suit was immediately re-commenced, and in doing so, interrogatories were propounded to the defendant. The answers have been mislaid, but the interrogatories themselves indicate to us that the plaintiff really thought he had a cause of action against the defendant. He also sent a commission to London to examine *Mr. Griffith* as a witness; but he refused to testify, excusing himself on the ground that both parties were his friends, and that he did not wish to loose the friendship of either. An extract of a letter from *Griffith* to the plaintiff, induces us to think that the latter did expect testimony from *Griffith* to support his suit, but his commission was never returned.

Further, it is so improbable that *Kearney* should have quit an employment of $1500 a year, for a monthly employment which would amount to but $1200 a year, as alleged by *Holmes* in his answers, that I readily yield to the conclusion that *Kearney* thought he had some other claim upon his employer than mere monthly wages, although it may not have been so.

This suit, I suppose, was either discontinued or that a judgment of non-suit was entered, though the record does not show what disposition was made of it. The counsel for the plaintiff in the suits, testifies that both were brought and prosecuted in good faith, and that if *Griffith* was within the reach of the court, he would not hesitate to prosecute the claim again, and he bases the opinion, as he states, upon letters from *Griffith* which he has seen.

The plaintiff in those suits and defendant in this, then changed his attorney and brought suit only for the balance of a year's salary after his discharge as clerk. A non-suit was entered in the absence of the plaintiff and his new counsel. But the former attorney proves that he was summoned and attended as a witness; that a suit on trial was terminated sooner, and that of *Kearney* called earlier than was expected, he and his counsel being in the office of the latter waiting for the trial, and that this third misfortune very much annoyed the present defendant. It was one which sometimes occurs in the courts, and we have not the slightest reason to believe that he and his attorney intentionally absented themselves that the non-suit might be entered.

The suit was immediately re-commenced for the balance of the year's wages and has been tried on its merits. Although we have come to the conclusion with the district judge that *Holmes* was justified in dismissing the defendant as clerk, yet I am sure that he was sincere in believing the contrary. His interest and feelings swayed his judgment and induced his error. Moreover, he believed that he had a good cause of action. The evidence renders it almost certain that he thought he was engaged by the year. He left an employment of $1500 a

<div style="float:right">KEARNEY<br>v.<br>HOLMES.</div>

year for the services of the plaintiff, where he was to receive each month what would amount to but $1200 a year. It was almost impossible for him to consider the latter employment more precarious than that which he left. He occupied, too, a station in the store as superintending clerk, which experienced witnesses think was inconsistent with the hypothesis that he was employed by the month.

The defendant has been unfortunate in the plaintiff's employment and in his suits, as well as imprudent. And I have no doubt has indulged in angry feelings growing out of disappointment, which has betrayed him into errors of judgment; but I see no evidence of bad faith on his part. The large amount demanded for damages has some tendency to show it; but that is a custom so common with litigants for unliquidated claims, that it is not conclusive against him. I cannot concur in the judgment against him for damages.