341 So.2d 1209 (1976)
SUCCESSION of Dock Albert CUTRER and Otto P. Cutrer
v.
John T. CURTIS, Sr.
No. 11017.
Court of Appeal of Louisiana, First Circuit.
December 20, 1976.
Rehearing Denied February 14, 1977.
Writ Refused March 25, 1977.
*1211 Stuart A. McClendon, William H. McClendon, Jr., of McClendon & Denkman, Metairie, for succession of Dock Albert Cutrer and Otto P. Cutrer, plaintiffs-appellees.
Hugh G. Oliver, Westwego, for John T. Curtis, Sr., defendant-appellant, Homer D. Cutrer, intervenor-appellant, and Dixie Corine Cutrer Wild, third party defendant-appellant.
Perrin C. Butler of Wiedemann & Fransen, New Orleans, for St. Paul Fire & Marine Ins. Co., third party defendant-appellee.
Before LANDRY, COLE and CLAIBORNE, JJ.
CLAIBORNE, Judge.
This is a possessory action in which the plaintiffs seek to be maintained in possession of a 100-acre tract of land and to enjoin the defendant from registering documents purporting to evidence defendant's ownership of the property and from otherwise disturbing plaintiffs' possession. Plaintiffs also demand damages and attorney's fees. The alleged disturbance in their possession was a disturbance in law as defined in LSA-C.C.P. Art. 3659. The succession is represented in this law suit by the testamentary executor, Otto P. Cutrer, who as a legatee purportedly appears individually as well as in his representative capacity. (The validity of the decedent's will, attacked by defendant, has been sustained by the Civil District Court for the Parish of Orleans and the Court of Appeal, Fourth Circuit. Succession of Cutrer, 297 So.2d 543 (La.App. 4th Cir. 1974).)
The property had been inherited in 1943 from Preston Pond Cutrer and Amanda Mary Cutrer by eleven heirs, John R. Cutrer, Homer D. Cutrer, Otto P. Cutrer, Dock A. Cutrer, Ethelene Florence Cutrer Lewis, Fannie May Cutrer Fitzpatrick, Dixie Corine Cutrer Wild, Ida Lee Cutrer Lewis, Dollie Martha Cutrer Booty, Ivy Marshall Cutrer, and Annie Cutrer Mixon, in equal shares. In 1953 the decedent acquired seven undivided one-eleventh interests from seven of his co-heirs, John R. Cutrer, Homer *1212 D. Cutrer, Otto P. Cutrer, Ethelene Cutrer Lewis, Fannie Cutrer Fitzpatrick, Dixie Cutrer Wild, and Dollie Cutrer Booty. Three years later he acquired the entire property including the three one-eleventh outstanding interests in a judicial partition by licitation. In 1972 and 1973 defendant purportedly acquired by acts of sale from six of the original vendors named in the 1953 sale, all of their interest in the property, and caused the sales to be recorded, as a result of which alleged disturbance in law this litigation ensued.
The issues in this case are as follows:
1) Whether the defendant had a cause of action against the plaintiffs and their attorney for allegedly libelous remarks in the petition;
2) Whether the court erred in refusing to receive evidence of an alleged compromise;
3) Whether a deceased notary's files are public records which defendant had a right to examine;
4) Whether the succession had a right to undisturbed possession of the property by virtue of the 1953 sale and the adjudication in the partition sale;
5) Whether the court erred in ordering cancellation of a sale made after probate of the will to defendant by one of the two universal legatees;
6) Whether the court erred in rejecting the plaintiffs' demands for damages; and
7) Whether this appeal is frivolous.
Defendant filed a third party demand seeking joinder of the surviving heirs of the original ancestors in title, alleging that the 1953 sale to the decedent was a simulation made only for convenience, and that the decedent was acting as agent (apparently undisclosed) for all his co-heirs in various timber sales and mineral leases and as plaintiff and adjudicatee in the partition suit. Incorporated with the third party demand is a reconventional demand praying for nullification and cancellation of the 1953 sale to decedent, declaration that a succession bank account (allegedly containing the proceeds of timber sales and oil leases) is the joint property of eight of the eleven original co-owners (it being apparently conceded that the other three lost their rights in the partition suit), and for $100,000 damages for allegedly libelous statements in the plaintiffs' petition.
Homer D. Cutrer intervened in support of defendant's contentions. Dixie Corine Cutrer Wild answered the third party demand in the form of a general admission.
Through numerous amendments to the pleadings defendant also demanded that all acts of any nature performed by decedent, Dock Cutrer, with respect to the property be declared to have been done in decedent's capacity as agent for the seven persons from whom he purchased in 1953 except with respect to decedent's own 1/8 share. He demanded damages against plaintiffs' attorney in the amount of $3,006,000 for the allegedly libelous words of the petition, and later joined St. Paul Fire & Marine Insurance Company the attorney's professional liability insurer. He further pleaded a compromise, praying that plaintiffs be ordered to sell defendant all interest in the property in accordance with the alleged compromise.
St. Paul and plaintiffs' attorney filed dilatory exceptions to the third party demands against them on the ground that the third party plaintiff was seeking to improperly cumulate actions beyond the scope of those actions which may be so cumulated under the provisions of LSA-C.C.P. Art. 1111.
St. Paul, plaintiffs' attorney, and plaintiff Otto Cutrer, also filed peremptory exceptions of no cause and no right of action against the third party demands, contending that the remarks of the petition were not libelous per se or in context, that as to the attorney they were privileged, that the third party demands contained no allegation of actual or implied malice in their utterance, that no cause of action could arise until termination of this lawsuit, and finally repeating the contentions made in their dilatory exceptions with regard to cumulation.
Defendant filed peremptory exceptions of no cause and no right of action on three grounds, the only one of which presently *1213 urged is that subsequent to decedent's death, the probate of his will, and the qualification of the executor, Homer D. Cutrer, legatee of one-half interest in the succession, sold all his interest in the property to defendant.
After a hearing on all exceptions, the district court sustained the peremptory exceptions of third party defendants (Cutrer, St. Paul and the attorney), dismissing as of nonsuit the claims for damages as a result of the allegedly libelous language of the petition. The dilatory exceptions were declared moot and maintained. The exceptions of no right and no cause of action filed by defendant were referred to the merits.
Defendant appealed. While the record was in preparation, trial on the merits was held. After trial on the merits, the court rendered judgment in favor of the plaintiffs and against the defendant, recognizing the succession's right to ownership of the property and maintaining it in possession. The defendant was restrained from registering documents claiming ownership to the property and from otherwise disturbing such possession. The court further ordered cancellation of the inscriptions of the sales which defendant had caused to be recorded, including the sale made subsequent to the probate of decedent's will.
All other demands of the plaintiffs and all other demands of the defendant were rejected. Defendant, intervenor and third party defendant Dixie Wild appealed.
Plaintiffs answered the appeal seeking reversal of the judgment insofar as it rejected the claim for attorney's fees incurred in connection with clearing the succession's title to the property. Plaintiffs further urge that the appeal be declared frivolous and ask for attorney's fees. All appeals are simultaneously before us.
The district court sustained the exceptions of no cause of action and dismissed the third party demands and reconventional demands as of non-suit on the grounds that the cause of action for libel would not mature until the final disposition of the law suit in which the allegedly libelous statements are made.
In Marionneaux v. King, 331 So.2d 180 (La.App. 1st Cir. 1976), this court held that an exception of no cause of action is proper when a defendant brings suit for defamation in connection with allegations made against him in a pending suit. (See the comprehensive review of the jurisprudence in that case.) A reconventional demand for damages for an alleged libel set forth by the pleadings in a pending civil suit is subject to a peremptory exception of no cause of action at any stage of the proceedings. Thomas v. Mobley, 118 So.2d 476 (La.App. 1st Cir. 1960).
Counsel argues that this is not a case of malicious prosecution or libel, but a case of abuse of process, which may be brought prior to termination of the proceeding on which the action is based. Counsel cites Gonsouland v. Rosomano, 176 F. 481 (U.S. CCA 5th Cir. 1910) a diversity of citizenship case from Louisiana. The court there held that according to the law of Louisiana, the action of malicious prosecution is founded on the same principles and subject to the same defenses as have been established by the common law prevailing in the other states, and that there is no reason under Civil Code article 2315 why the same would not be true to an action for abuse of process. No Louisiana case has been cited except Kearney v. Holmes, 6 La.Ann. 373 (1851), a case involving the filing and re-filing of a series of law suits on the same matter.
In Gonsouland, the court, classifying the case as "abuse of process", as distinguished from "malicious use of process", i. e. "malicious prosecution", held that the plaintiff was not required to allege and prove the three essentials of malicious prosecution, to wit: (1) the proceeding was instituted with malice and (2) without probable cause; and (3) that the proceeding upon which the action is based has been terminated. These requirements are distinguishable and distinguished in the common law from the essential elements of "abuse of process" which are: (1) the existence of an *1214 ulterior purpose; (2) a wilful act in the use of the process not proper in the regular prosecution of the proceeding. Ledford v. Smith, 212 N.C. 447, 193 S.E. 722; Moffett v. Commerce Trust Company, 283 S.W.2d 591 (Mo.).
In Gonsouland the plaintiff obtained a judgment for the balance of the purchase price of certain property or alternatively the rescission and cancellation of the sale. While the suit was pending the defendant brought two suits against the plaintiff, one for possession of the property he purchased and the other for rent. In the latter he caused a seizure of stock and fixtures belonging to plaintiff in another house, which were not liable to seizure under the writ. Defendant then by summary process had the plaintiff evicted under a writ of ejectment and seized all the furniture, beds, bedding and personal wearing apparel of plaintiff and his family. After obtaining possession of the property he destroyed one of the buildings, and plaintiff's clothing and other personal effects were never returned. Obviously there was a stated cause of action in Gonsouland. In other states it would be classified as "abuse of process". In the case of Melton v. Rickman, 225 N.C. 700, 36 S.E.2d 276, 162 A.L.R. 793, the court explained the difference among three similar torts as follows:
"One who uses legal process to compel a person to do some collateral act not within the scope of the process or for the purpose of oppression or annoyance is liable to damages in a common law action for abuse of process.
So then, while false imprisonment is the arrest and imprisonment without legal process and malicious prosecution is the prosecution with malice and without probable cause, abuse of process is the misuse of legal process for an ulterior purpose. It consists in the malicious misuse or misapplication of that process after issuance to accomplish some purpose not warranted or commanded by the writ. It is malicious perversion of a legally issued process whereby a result not lawfully or properly obtainable under it is attempted to be secured."
Assuming for sake of argument that the common law tort, together with its attendant applicable rules are a part of Louisiana law under Article 2315 as suggested in Gonsouland, neither that case nor Kearney v. Holmes involved allegedly libelous statements in the pleadings, and both cases are distinguishable on their facts. (It should be noted also that in Kearney the defendant in the principal action filed a separate suit for damages alleging "malicious prosecution". It is not an "abuse of process" case. The separate action was consolidated with plaintiff's suit by consent and tried as a reconvention, and the fact that it was heard despite the pendency of the original action can only be attributed to the consented consolidation.)
The exceptions of no cause of action were correctly sustained.
Defendant contends there was a compromise of the matters at issue here and prays for specific performance. During the pendency of the litigation in opposition to the probated will in the Civil District Court of Orleans, a notation was made on the margin of a copy of one of the pleadings in that suit, which reads: "Settled for $3,773.00 cash plus bank account". It carries the initials W.H.M. and H.G.O. and the date February 9 [1973].
The district court refused to admit evidence of the compromise on the ground that it was, if anything, a compromise of another law suit antecedent to the present litigation. The evidence was taken as an offer of proof. Considering that on March 2, 1973, almost one month after entering into the so-called compromise, the parties went to trial, and after trial and judgment the matter was appealed, it is apparent that the parties either did not consider they had a binding compromise agreement or it was not pleaded in bar of judgment in that case, or upon consideration of the matter the court did not give effect to it. (It is highly likely that the court would not find it to be a writing complete in itself and independent of explanatory parol evidence. See Bugg v. State Farm Mut. Auto Ins. Co., 295 *1215 So.2d 194 [La.App. 4th Cir. 1974]; Trask v. Lewis, 258 So.2d 603 [La.App. 1st Cir. 1972].)
In any case the trial court was correct in refusing to consider or reconsider the compromise purportedly entered into during the pendency of prior litigation as to the subject matter of such litigation.
Defendant contends the 1953 sale to decedent was a simulation and that the decedent acted for himself and as agent for some of his co-heirs in acquiring the outstanding interest of three co-heirs by partition sale.
We agree with the district court. There is no evidence whatsoever in support of the contention. Mrs. Wild testified while she did not deny signing the 1953 notarial act she could not remember doing so and does not know why she signed it. She and Homer Cutrer testified they thought they owned an interest in the property when they sold to John Curtis. The court refused to admit hearsay testimony or parol evidence. A counter letter would have been admissible to vary the purport of the notarial act, but none was produced. (Franton v. Rusca, 187 La. 578, 175 So. 66 (1937).
This leads us to a consideration of the defendant's complaint that the trial court refused defendant's attorney the right to see the records and files of the late Mary Purser, attorney and notary, who allegedly handled the Cutrer legal business during the time the 1973 sale took place. He speculated that a counter letter might be found among those records. He cites State ex rel. Garland v. Theard, 45 La.Ann. 680, 12 So. 892 (1893) for the proposition that a deceased notary's records are public records which must be delivered to the Clerk of Court upon the notary's death for convenience of the public. The Garland case arose in Orleans Parish under Act 147 of 1867 which provided special procedures for disposition of original notarial records in that parish. That law and its successors were not intended to apply to records of notaries commissioned in any other parish, and Mary Purser was not an Orleans Parish notary. Counsel for the defendant could have gained access to any of such records, except any which might be privileged, by timely issuance of a subpoena duces tecum. He failed to file a timely request. Plaintiff's attorney stated to the court that although papers left by the notary were located in a back room in his law office, he was not familiar with the records nor was he their custodian, and some had been removed from time to time by the notary's son.
The court in its discretion properly refused to interrupt the proceedings to permit counsel to have a subpoena issued to the owner or custodian of the records and then to rummage through copies of notarial acts and files of records of a deceased lawyer in hopes of finding a document of whose existence he had not the slightest intimation. Thorough investigation in preparation for trial may have justified such a course, but the time for investigation had passed.
In the absence of legal proof that the decedent was not in fact the owner of the property as indicated by the public record, it must be concluded that the succession representative is entitled to be maintained in the enjoyment of his right to possession. See Estate of Rice v. Deville, 240 So.2d 379 (La.App. 3rd Cir. 1970). The trial court was correct in ordering cancellation of the inscriptions of the purported sales to John T. Curtis, Sr. prior to decedent's death.
It is suggested that the court erred in ordering cancellation of the sale from Homer D. Cutrer, a legatee, to John T. Curtis, Sr. dated after decedent's death and after the executor had qualified.
In Fortson v. Lake, Inc., 176 So.2d 703 (La.App. 4th Cir. 1965) the court said:
"Under the maxim ["le mort saisit le vif"] the heir, or in the absence of a forced heir, the universal legatee acquires seizin and ownership of right from the moment of the decedent's death. But where there is an administration of the estate of the decedent, the administrator or executor, subject to the supervision and control of the court, has actual possession of the estate's property during the *1216 administration, the administrator or executor acquires seizin in fact, while the heir or, in the absence of a forced heir, the universal legatee acquires seizin of right"

It is settled that an heir or universal legatee may sell his entire interest in a succession subject to the charges with which that interest is burdened, and a sale of an heir's interest in a particular piece of property belonging to a succession which owes debts or is under administration is an absolute nullity. Griffin's Succession v. Davidson, 125 So.2d 30 (La.App. 2nd Cir. 1960); Van der Karr v. Stead, 21 So.2d 111 (La.App. 1st Cir. 1945); Fortson v. Lake, Inc., supra. The seller was a universal legatee of one-half of the succession.
The purchaser, John T. Curtis, Sr., and the seller, Homer D. Cutrer, were the opponents to the olographic will in the litigation to which reference is made. Having failed to prevail in that litigation, Curtis relied on the deeds previously recorded adversely to decedent's title, and now alternatively seeks confirmation of his purchase of all of Homer Cutrer's one-half interest. The sale in question purports to transfer all of vendor's right, title and interest in the Estate of Preston Pond Cutrer and Amanda Mary Cutrer, "more fully described as follows:. (Here follows a description of the 100-acre tract in question.)" It also contains the following clauses:
"Sale includes all movables including seller's share in The Hibernia Bank Savings Account No. 8672.
"Also included are all rights in family tombs in New Orleans and elsewhere."
* * * * * *
"Included in this sale are all rights of any nature, type, or form; and all property of any nature, type, or form that may come to seller in the litigation styled Succession of Dock Albert Cutrer, Civil District CourtParish of Orleans, No. 543-809, Div. E."
It is conceded that the succession owns no other real estate.
The foregoing words, although lacking in desirable clarity, when read together purport to transfer all of Homer Cutrer's interest in decedent's estate. Homer Cutrer concedes it does. This sale therefore effectively conveys one-half of all the property depending on the Succession of Dock Albert Cutrer together with all debts and charges against said succession to defendant who now stands in lieu of Homer Cutrer with respect to the succession. The rights of the executor are paramount, and if it becomes necessary to sell the property to pay debts of the successionit is alleged that there is insufficient cash on deposit to pay funeral expenses and law chargesthe sale from Homer Cutrer to Curtis will neither be an impediment nor will it affect the purchaser's title. It merely entitled Curtis to one-half of the residue of the succession upon final accounting. The judgment of the trial court must be amended to delete references to the cancellation of the inscription of the deed dated March 3, 1973 from Homer D. Cutrer to John F. (sic) Curtis, Sr., registered in Conveyance Office Book 378, Page 218, of the public records of Tangipahoa Parish.
The court denied plaintiffs' claims for damages for the slander of title. The attorney's fees incurred in connection with this litigation to restore the executor's right to possession are advanced as damages. They are not recoverable. Roge v. Kuhlman, 136 So.2d 819 (La.App. 3rd Cir. 1962). See also Yiannopoulos, Louisiana Civil Law of Property, Sec. 138, note 251.
The final question before us is whether appellees are entitled to damages for a frivolous appeal. Such damages are not allowable unless it appears that the appeal is taken solely for delay or that counsel is not sincere in his view of the facts as he appreciates them or of the law he advocates even though the court is of the opinion that such view is not meritorious. Hodson v. Hodson, 292 So.2d 831 (La.App. 2d Cir. 1974); Johnson v. Iowa Rice Dryer, Inc., 226 So.2d 194 (La.App. 3rd Cir. 1969). Where the appellee obtains a modification of the judgment, damages for a frivolous *1217 appeal cannot be awarded. Ornelas v. Silvan Newburger & Co., 139 La. 832, 72 So. 372 (1916). Our modification of the judgment in the respect discussed hereinabove forecloses the issue of damages for a frivolous appeal.
The judgment of the district court will be amended, and as amended, affirmed. All costs will be paid by the appellants.
AMENDED AND AFFIRMED.