386 So.2d 692 (1980)
Leo VASSEUR, et ux., Plaintiffs-Appellees,
v.
EUNICE SUPERETTE, INC., Defendant-Appellant.
No. 7690.
Court of Appeal of Louisiana, Third Circuit.
June 25, 1980.
Rehearing Denied August 22, 1980.
*693 Lewis & Lewis, James C. Lopez, Opelousas, for defendant-appellant.
Donald J. Richard, Opelousas, for plaintiffs-appellees.
Before DOMENGEAUX, FORET and CUTRER, JJ.
DOMENGEAUX, Judge.
Plaintiffs, Mr. and Mrs. Leo Vasseur, instituted a suit for malicious prosecution against the defendant, Eunice Superette. Eunice Superette had filed criminal charges of issuing worthless checks against the Vasseurs, but the charges were dismissed after the Vasseurs paid the Superette what they owed. After trial on the merits of plaintiffs' malicious prosecution suit, the Judge rendered a decision in favor of plaintiffs "under the abuse of process rule." The Superette has appealed and argues that the essential elements of a cause of action for abuse of process are absent. It also contends that the plaintiffs' petition lacks sufficient allegations of fact to support a cause of action for abuse of process. Plaintiffs *694 have answered the appeal seeking an increase in the amount of the judgment. The Vasseurs also are seeking punitive damages under La.C.C. Article 2315.1.
The evidence establishes the following undisputed facts: The Vasseurs were frequent customers of the Eunice Superette grocery store in late 1974 and 1975 (and for several years before, as well). The Vasseurs customarily "paid" for their groceries by signing a blank counter check drawn on Tri-Parish Bank and Trust Company in Eunice, where the Vasseurs maintained a joint checking account. The rest of the information on the check, such as the amount of the purchase, the date, and the name of the payee, always "Superette", was supplied by the cashier or some other employee of the Superette.
Between December 13, 1974, and February 24, 1975, nine such checks totalling $344.43 were written by the Vasseurs.[1]
On May 21, 1975, Mr. and Mrs. Vasseur signed a notarized petition for voluntary bankruptcy. This petition was filed on May 30, 1975, in the U.S. District Court. In the petition, the Vasseurs listed Eunice Superette as an unsecured creditor in the amount of $437.31.
On May 26, 1975, Mrs. Frances Bertrand, on behalf of Eunice Superette, sent certified letters to Mr. and Mrs. Vasseur requesting payment of the nine checks described in footnote 1. According to the letter, the checks had been run through the bank and were returned to the Eunice Superette with an NSF designation. The Vasseurs did not comply with these requests.
The Superette, acting through Mrs. Bertrand, formally filed criminal charges of issuing worthless checks against Mr. and Mrs. Vasseur in August of 1975, in connection with the Vasseurs' nonpayment of the nine checks described above. All criminal charges were subsequently dismissed or dropped after the Vasseurs paid the Superette all sums represented by the nine checks.
While the above facts are not in dispute, there is serious disagreement over whether the "checks" were intended as payment for the goods or were intended merely as evidence of indebtedness.
The Vasseurs contend that Jerome Moore, the owner of the Superette, had agreed years before to allow them to charge their goods and pay for them later when Mr. Vasseur was paid by his employer. They argue that the "checks" were meant only as evidence of the indebtedness and were never intended to be negotiable instruments which could be presented for payment at a bank. The checks, or notes, were to be held by the Superette until they were later redeemed by the Vasseurs, who would at that time pay the aggregate amount of the checks.
On the other hand, Jerome Moore testified that there never was a charge account agreement with the Vasseurs. Rather, their checks were treated no differently from checks of other customers. Consequently, the Vasseurs' checks were run through Tri-Parish Bank and returned to the Superette with an NSF designation.
Other testimony on behalf of defendant indicated that ordinarily, once a check returned NSF, that customer's name was put on a "bad check" list, a copy of which was posted on each cash register. These "bad check" customers were telephoned, were told that their checks were returned, and were given an opportunity to pay the amount of the check. If no payment was made, a certified letter was sent to the customer, who was then given ten days to pay the bill before it was turned over for collection. Apparently because they were neighbors (they lived across the street from the Superette) the Vasseurs were treated differently. Their names were never added to the bad check list even though the number of NSF checks issued by them continued *695 to mount. Only after the Vasseurs had ignored repeated telephone requests that they pay their bills did the Superette finally send the Vasseurs certified letters formally requesting payment within ten days.[2]
Thus, the Superette argues that the Vasseurs' checks were intended as payment for the goods received and not as "hold" checks. Only because they were neighbors and had been frequent customers of the Superette for years did Mr. Moore allow several months to pass before instructing one of his employees, Frances Bertrand, to institute legal action against the Vasseurs for not paying their NSF checks.

ABUSE OF PROCESS
The entire text of the trial judge's reasons for judgment reads:
"Under the broad relief provisions of Code of Civil Procedure Article 1841 and without going into the vexatious problem of malice by implication etc. (there seems to be no personal spite or ill will) I hold plaintiff is entitled to recover under the abuse of process rule. See 72 C.J.S. [Process], pages 1187 et seq., Secs. 119 and 120; 1 Am.Jur.2d, pages 261 et seq., Secs. 14 and 15; Prosser (4th Ed.), pages 856 et seq.; Minitogs, Inc. vs. Young [La. App.], 354 So.2d 1389; Sazdoff vs. Bourgeois [La.App.], 301 So.2d 423 and Cutrer vs. Curtis [La.App.], 341 So.2d 1209.
It was admitted that Mrs. Bertrand was instructed to file criminal charges in order to collect payment. Thus, the ulterior motive requirement for this type liability. As to the act not regular in the proceedings, the record shows the charges were dropped upon payment. Though there is little explicit and direct testimonial description of negotiations re payment etc., that other requirement of irregular use of the process is necessarily to be inferred from the sequence between the payment and the dropping of the charges and additionally from the ulterior motive itself.
Damages are fixed at $1,500 for Mrs. Vasseur and $750 for Mr. Vasseur. Plaintiff's attorney to draft judgment and submit for signature with copy to opposing counsel who will have five days to make objection to form."
The tort action for abuse of process has long been recognized at common law and several Courts of Appeal in this state (see trial court's opinion, above, for citations) have had occasion to discuss this heretofore alien action which is kindred to the tort of malicious prosecution. There seems to be no reason not to recognize a plaintiff's right to recover for damages caused by a defendant's abuse of process when the facts so warrant.
Unlike malicious prosecution, however, where several elementsincluding malice and probable cause[3]must be established for the plaintiff to prevail, there are only two essential elements of abuse of process. These are set forth in Law of Torts, Hornbook Series (3rd Edition), by William A. Prosser, at page 877:
"The essential elements of abuse of process, as the tort has developed, have been stated to be: First, an ulterior purpose, and second, a wilful act in the use of the process not proper in the regular conduct of the proceeding."
The trial judge found both elements of abuse of process satisfactorily proven. The *696 ulterior purpose consisted of the Superette's desire to collect payment; the improper act was the dismissal of the charges after payment was rendered. We disagree that the elements of abuse of process have been established in this case.
We know of no law which prohibits a holder of an NSF check from filing criminal worthless check charges against the issuer of the check merely because he has as his only objective payment of what is due from the defendant-debtor. La.R.S. 14:71, at the time these criminal charges were brought, simply provided:
"Issuing worthless checks is the issuing, in exchange for anything of value, with intent to defraud, of any check, draft, or order for the payment of money upon any bank or other depository, knowing at the time of the issuing that the offender has not sufficient credit with the bank, or other depository for the payment of such check, draft, or order in full upon its presentation.
The offender's failure to pay such check, draft, or order within ten days after the receipt by him of written notice of its nonpayment upon presentation shall be presumptive evidence of his intent to defraud."
The statute concluded by establishing penalties imposable upon those convicted of the crime. Nowhere does the statute proscribe the filing of criminal charges when the complainant is prompted by purely selfish motives. It is our opinion that if worthless checks have been issued and criminal charges are properly brought against the issuer, the underlying motive for filing the charges is immaterial.
Nothing in the record, or in the reasons for judgment, indicate that the criminal charges were improperly filed or that the Superette did not have the grounds to file such charges. Indeed, the Superette held nine of the Vasseurs' checks and each was marked NSF. Additionally, the Vasseurs did not pay the checks within ten days after receipt of written notice of the non-payment of the checks so their intent to defraud was presumed under the statute. Therefore the Superette did have the grounds to file the worthless check charges.
Our conclusion that the filing of criminal charges to seek restitution is not the kind of ulterior purpose envisioned by the abuse of process rule is bolstered by the fact that R.S. 14:71 was amended in 1975 to provide that the court may order restitution as part of the sentence of those found guilty of issuing worthless checks. It thus appears that the seeking of restitution is not necessarily an illegal or illegitimate objective in the use of the criminal process. Consequently, the first essential element in proving abuse of processulterior or wrongful purposeis lacking.
The second essential element of abuse of process is also lacking. Dismissal of the criminal charges after voluntary restitution is made does not constitute the kind of improper act or misuse of the criminal process that would warrant a finding of abuse of process. Our understanding of the law is that once criminal charges have been filed, only the District Attorney has the authority to cease prosecution, even though the complainant has changed his mind and wants to drop the charges.[4]

MALICIOUS PROSECUTION
The trial judge's opinion did not clearly indicate which version of the facts he believed. If he believed the Vasseurs' testimony that the checks were "hold" checks, then the abuse of process theory would not apply since Jerome Moore would have known the checks were "hold" checks and his institution of criminal proceedings against the Vasseurs would have been wrongful. In that instance, application of the theory of malicious prosecution would be more appropriate since the act complained of would be the wrongful (or malicious) institution of criminal proceedings. *697 If Jerome Moore knew that the checks were "hold" checks, it would be very difficult to conclude that he acted without malice in having criminal charges filed against the Vasseurs. However, one of the few findings of fact that the judge did make is that the Superette (or Jerome Moore) acted without malice. This finding, which we cannot say is clearly wrong after a review of the evidence, and our finding that the Superette had probable cause to institute the proceedings, defeats the Vasseurs' action for malicious prosecution since malice and probable cause are essential elements of the tort. This is apparently why the judge decided the case on the abuse of process theory.

PUNITIVE DAMAGES
The Vasseurs have asked for punitive damages under La.C.C. Article 2315.1. Since the Superette was guilty of no wrongdoing this request is denied. Even if the trial court judgment was upheld, however, Article 2315.1 is inapplicable here because it deals only with a judgment obtained because of defamation, libel, or slander. It does not apply to suits for malicious prosecution or abuse of process.

DECREE
For the above reasons, the judgment of the District Court is reversed. It is hereby Ordered that there be judgment herein in favor of Eunice Superette, Inc., and against Mr. and Mrs. Leo Vasseur, dismissing the suit filed by the Vasseurs against the corporation. All costs of these proceedings are assessed against Mr. and Mrs. Leo Vasseur.
REVERSED AND RENDERED.
NOTES
[1] Mrs. Vasseur signed checks on December 13, 24, and 28, 1974, and January 10 and 28, 1975, in amounts of $138.07, $42.39, $45.22, $33.31, and $25.06, respectively, for a total of $284.05. Mr. Vasseur signed checks on January 16 and February 4, 11, and 24, 1975, in amounts of $44.73, $4.19, $4.74, and $6.72, respectively, for a total of $60.38.
[2] Apparently the certified letters were sent to the Vasseurs before the Superette learned of their intention to file for bankruptcy. The letters were dated May 26 whereas the bankruptcy petition was not filed until May 30.
[3] The Supreme Court has recently restated that an action for malicious prosecution lies where there is a concurrence of these elements:

"... (1) The commencement or continuance of an original criminal or civil judicial proceeding. (2) Its legal causation by the present defendant against plaintiff who was defendant in the original proceeding. (3) Its bona fide termination in favor of the present plaintiff. (4) The absence of probable cause for such proceeding. (5) The presence of malice therein. (6) Damage conforming to legal standards resulting to plaintiff."
Hibernia National Bank of New Orleans v. Bolleter, (La.1980) (Docket No. 66157); Robinson v. Goudchaux's, 307 So.2d 287 (La.1975).
[4] Since we find that an abuse of process was not proven in this case, it is unnecessary to consider the Superette's argument that the Vasseurs' petition fails to allege acts sufficient to support a cause of action for abuse of process.