457 So.2d 291 (1984)
Leroy J. STARK, II, Plaintiff-Appellant,
v.
EUNICE SUPERETTE, INC., et al., Defendant-Appellee.
No. 83-918.
Court of Appeal of Louisiana, Third Circuit.
October 10, 1984.
Writ Denied December 7, 1984.
*292 Privat & Regan, Kenneth O. Privat, Crowley, for plaintiff-appellant.
Michael W. Fontenot and Welton P. Mouton, Jr., Lafayette, Franklin, Moore & Walsh, James R. Shelton, Opelousas, for defendant-appellee.
Before FORET, STOKER and KNOLL, JJ.
FORET, Judge.
Plaintiff, Leroy J. Stark, II, filed suit against Eunice Superette, Inc. and the City of Eunice, seeking damages for malicious prosecution. Prior to trial, plaintiff voluntarily dismissed his suit as to the City of Eunice. The trial court rendered judgment in favor of defendant, Eunice Superette, Inc., and plaintiff has appealed. Several issues are raised by this appeal:
(1) Whether the trial court erred in concluding that all of the elements necessary for malicious prosecution were not present.
(2) Whether the trial court erred in failing to find that a false arrest occurred.
(3) Whether the trial court erred in failing to find that the actions of Eunice Superette, Inc., through its owners and employees, constituted an abuse of process.
(4) Whether the trial court erred in not finding that defendant had breached a duty of care owed to plaintiff by failing to follow its own check cashing policy.

FACTS
On September 29 or 30 of 1980, an individual presented an LSU Eunice payroll check in the amount of $1,663.43, payable to L.J. Stark, at the Eunice Superette. The check was cashed by Peggy LeMoine (Peggy Mouier at that time), an employee of defendant. Approximately one month later, defendant's employees learned that the check had been forged. L.J. Stark had reported the check missing shortly after September 30, 1980. On October 21, 1980, he executed, in accordance with the policy of his employer, an affidavit declaring the endorsement on the check to be a forgery.
Upon discovering that the check had been forged, defendant's employees reported the theft to Eunice City Police, and an officer from the department was sent to investigate. The officer interviewed Peggy LeMoine and Mark K. Guillory, a bookkeeper for defendant who was present when the check was cashed and approved its cashing. At that time, neither employee could identify the person who had cashed the check, although both of them were able to give a description of the individual. The investigating officer testified that he had a meeting with Jerome Moore, the owner of Eunice Superette, Inc. and that Mr. Moore was interested in the progress of the investigation. This meeting took place before plaintiff was implicated in the crime and there was no suggestion that Mr. Moore steered the investigation toward plaintiff.
*293 Some five weeks after his first interview with the investigating officer, Guillory advised the Eunice Police Department that he suspected that it may have been one of L.J. Stark's sons who had cashed the check. He informed the police that he remembered talking to Mr. Stark's son while the latter was cashing a check and that this was about the same day and time that the forged check was cashed. Although Guillory did not know Mr. Stark's sons by name, he knew them by sight since the Stark family had been regular customers of the superette during the seven years Guillory was employed there. Guillory identified plaintiff from a photographic spread. The investigating officer then obtained a warrant for plaintiff's arrest on the charge of theft by fraudulent means (LSA-R.S. 14:67).
Plaintiff was arrested at Louisiana Tech in Ruston, Louisiana, where he attended school. On the day of plaintiff's arrest, plaintiff was also identified by Peggy LeMoine from the same photographic spread that police had shown to Guillory. The matter was not finally resolved until August 10, 1981, when the St. Landry Parish Grand Jury returned a no true bill.
Plaintiff brought suit against Eunice Superette, Inc. and the City of Eunice. Prior to trial, plaintiff voluntarily dismissed his suit against the City of Eunice. After trial, the court rendered judgment in favor of Eunice Superette, Inc. finding that although plaintiff was not involved in cashing the forged check, that defendant was not liable to plaintiff for damages since the actions of defendant's employees and owner were not so unreasonable as to be legally unjustified.
The jurisprudence of this State has interpreted LSA-C.C. Art. 2315 as providing a cause of action in favor of those "whose liberty has been interfered with in an unwarranted manner". Jones v. Soileau, 448 So.2d 1268 (La.1984), quoting Stone, 12 La. Civil Law Treatise, Tort Doctrine, § 200-01 at 264-66 (1977). Categorization of such a tort as malicious prosecution, abuse of process, or false imprisonment derives from the common law's treatment of this area of the law. See Jones v. Simonson, 292 So.2d 251 (La.App. 4 Cir.1974). Our courts have, on occasion, cautioned against the application of the limited strictures of the common law actions arguing that the concept of fault embodied in Civil Code Art. 2315 provides a broader extension of liability. Jones v. Simonson, supra; Whittington v. Gibson Discount Center, 296 So.2d 375 (La.App. 2 Cir.1974). Nevertheless, our courts have generally recognized the common law categorization of these torts and the concommitant strictures which govern the imposition of liability. (For malicious prosecution, see: Jones v. Soileau, supra; Vasseur v. Eunice Superette, Inc., 386 So.2d 692 (La.App. 3 Cir.1980), writ refused, 393 So.2d 747 (La.1980); Hibernia National Bank of New Orleans v. Bolleter, 390 So.2d 842 (La.1980). For false arrest, see Tillman v. Holsum Bakeries, Inc., 244 So.2d 681 (La.App. 4 Cir.1971), application denied, 258 La. 352, 246 So.2d 199 (1971). For abuse of process, see: Vasseur v. Eunice Superette, Inc., supra; Mini-Togs, Inc. v. Young, 354 So.2d 1389 (La.App. 2 Cir. 1978); Succession of Cutrer v. Curtis, 341 So.2d 1209 (La.App. 1 Cir.1976), writ denied, 343 So.2d 201 (La.1977)).

MALICIOUS PROSECUTION
In Jones v. Soileau, supra, the Supreme Court lists the necessary elements of a malicious prosecution action:
"... (1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to plaintiff."
In the present case, the absence of probable cause and the presence of malice are both disputed.
The crucial determination in regard to the absence of probable cause is whether the defendant had an honest and *294 reasonable belief in the guilt of the plaintiff at the time charges were pressed. Jones v. Soileau, supra. The trial court determined that defendant's employees did have such an honest and reasonable belief. We concur in this determination of the trial court.
Admittedly, defendant's two employees did mistakenly identify plaintiff as the individual who had cashed the forged check. It is also undisputed that Guillory, although familiar with plaintiff and his brothers, did not inform the police of his suspicion that the perpetrator was one of L.J. Stark's sons until more than a month after his initial interview with the investigating officer. In this regard, we note that one of the major difficulties that faced defendant's employees in their attempt to aid the police investigation was the fact that they had not learned of the forgery until more than a month after it had occurred. As a result, defendant's employees had the difficult task of remembering what had occurred, more than a month before, on what must have appeared at the time to be a routine day. In his initial statement implicating plaintiff and his brothers, Guillory informed the police that the reason he suspected one of L.J. Stark's sons was because he remembered speaking with Mr. Stark's son while the latter was cashing a check for a large amount of money. Guillory told the police that he could not say with certainty that Mr. Stark's son had cashed the forged check but that he, Guillory, recalled that the conversation with Mr. Stark's son took place around the time that the forged check was cashed. Under the circumstances, we do not think that Guillory's delayed identification was so unreasonable as to make us conclude that Guillory did not have an honest and reasonable belief in the guilt of plaintiff at the time he identified plaintiff.
As the trial court observed in its written reasons for judgment:
"What we have is misidentifications [sic] by both Mrs. Peggy Lemoine and Mark Guillory. These are among the most difficult problems in criminal work; they occur frequently. Also, on Guillory's part there was a delayed or lapsed memory with possible explanations. The testimony of Mr. Guillory and his manner of giving it indicate to me that the problems stemmed from a natural confusion on his part and his simplistic approach to the problems.
"Mistakes of these kind [sic] are not actionable in a criminal apprehension situation. They are at the heart of the decision whether to proceed against a particular individual. Until that decision is made, much evidence is left uncovered. If reasonable leeway for mistakes at that point is not given, criminal investigation will be substantially hampered.
"The decision to arrest in this case was not made by defendant or any of its employees. It was the decision of the police officer. Plaintiff's employees cooperated with and gave information to best of their ability. Their honest mistakes cannot be the basis of responsibility."
At least some of the responsibility for the misidentification of plaintiff rests with the police. Both of defendant's employees initially identified plaintiff from the same photographic spread. This spread consisted of seven photographs: one each of plaintiff's two brothers, one of another individual, and four of plaintiff. Clearly, the photographic spread was biased against plaintiff. To what extent this bias might have led to the misidentification of plaintiff by defendant's employees, we can only surmise. This bias, along with the danger of misidentification it occasioned, was not the fault of defendant nor its employees, but of the police.
Given all of the circumstances, we think that the actions of defendant's owner and employees were not unreasonable and, that to the extent that they caused the criminal prosecution to be brought against plaintiff, they acted with probable cause.
For essentially the same reasons, we feel that the element of malice is also lacking. Malice exists when a charge is made with knowledge that it is false or *295 with reckless disregard for the truth. Hill v. Smith, 399 So.2d 708 (La.App. 1 Cir. 1981). The evidence does not indicate that defendant's employees intentionally misidentified plaintiff, nor does it appear that the misidentifications evidenced, under the circumstances, a reckless disregard for the truth.
Since two of the necessary elements for an action of malicious prosecution are lacking, plaintiff cannot recover under this theory.

ABUSE OF PROCESS
The two essential elements of abuse of process are: (1) an ulterior purpose and (2) a wilful act in the use of the process not proper in the regular conduct of the proceeding. Vasseur v. Eunice Superette, Inc., supra. It involves the misuse of a process already legally issued whereby a party attempts to obtain some result not proper under law. Succession of Cutrer v. Curtis, supra, citing Gonsouland v. Rosomano, 176 Fed. 481 (U.S. CCA 5th Cir. 1910).
In the present case, plaintiff failed to prove that defendant's employees had an ulterior purpose in providing information to the police. Although there was a suggestion that one of defendant's employees wanted to "pin" the crime on plaintiff, no evidence was adduced in support of this contention. Moreover, there was no evidence suggesting that defendant had attempted to use the criminal process to obtain payment from plaintiff or his family.
The second essential element for the action of abuse of process is also lacking. There was no evidence indicating that the criminal process had been misused in an attempt to attain some improper end. Plaintiff was arrested and, in due course, the matter was brought before the St. Landry Parish Grand Jury which returned a no true bill. Nowhere is there any suggestion that defendant's owner or employees misused the criminal process once it was instituted.

FALSE ARREST
The tort of false arrest has been recognized under Louisiana law. To prove false arrest, the plaintiff must show that the arrest was made without any legal process or warrant or under a warrant null and void on its face. Tillman v. Holsum Bakeries, Inc., supra. Plaintiff was arrested pursuant to a valid arrest warrant issued by the City Court of Eunice. Plaintiff clearly cannot recover as a victim of a false arrest.

DEFENDANT'S DUTY TO PLAINTIFF
In his brief, plaintiff contends that he is entitled to recover damages from defendant because defendant breached a duty owed to him when it failed to follow its check cashing policy. We disagree, finding that defendant owed no duty to plaintiff in this regard. The duty that defendant's employees had to follow defendant's check cashing policy did not enure to plaintiff's benefit. Such policies are primarily designed to prevent the check cashing establishment from suffering losses as a result of cashing forged or otherwise bad checks. Although the duty of such an establishment in this regard may extend beyond self-protection, it is not so broad as to include a duty to an individual who might be mistakenly arrested for the crime of theft by fraud. We will not hold that the victim of a crime who becomes a victim due, at least partially, to his own negligence has breached a duty to anyone who might be mistakenly arrested for that crime. Such a result would be neither practical nor just.
Plaintiff has indicated no jurisprudence which will condone the creation of such a duty. The cases cited by plaintiff are inapposite. Accordingly, we find that defendant is not liable to plaintiff for defendant's failure to follow its own check cashing policy.

DECREE
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of *296 this appeal are assessed against plaintiff-appellant.
AFFIRMED.