IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 98-30663
_____

TIMOTHY P. COLLINS,

Plaintiff-Appellee,

versus

JOHN DOYLE, Individually and in his capacity
as Police Chief for the City of Harahan; ET AL.,

Defendants,

JOHN DOYLE, Individually and in his
official capacity as Police Chief
for the City of Harahan; CITY OF HARAHAN,

Defendants-Appellants,

versus

CENTURY INDEMNITY COMPANY, as the successor
to Insurance Company of North America;
INSURANCE COMPANY OF NORTH AMERICA,

Defendants-Appellees.

_____

Appeals from the United States District Court
for the Eastern District of Louisiana
(95-CV-620-S)
_____

February 9, 2000

Before JOLLY, EMILIO M. GARZA, and BENAVIDES, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:[*]

This section 1983 action arises out of the prosecution and

ultimate acquittal of Timothy Collins on charges of public contract

fraud and theft. Following his acquittal, Collins filed this

_____

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

action against Harahan Police Chief John Doyle, in his individual and official capacity, and against the City of Harahan, Louisiana, asserting federal claims for malicious prosecution and defamation under 42 U.S.C. § 1983, and state law claims against Doyle for malicious prosecution, defamation, and abuse of process.[1]  The jury awarded Collins nearly $600,000 in compensatory damages and $300,000 in punitive damages against Doyle in his individual capacity.  We hold that probable cause supported the challenged prosecution.  We, therefore, reverse the judgment of the district court and vacate the damage award.

I

A

On October 31, 1990, Timothy Collins was appointed by Carlo Ferrara, Mayor of the municipality of Harahan, Louisiana, to serve as the Recreation Director for the City of Harahan.  As director, Collins was paid an annual salary of $19,000.  One of Collins's many responsibilities as director was to supervise the various sporting leagues that were organized at Soniat Playground ("playground").  It was Collins's duty to outfit the players.[2]  He

---

[1]Collins also filed a section 1983 claim against Doyle both in his official and individual capacities, and against the City of Harahan for violating his "constitutional right to be free from retaliation for freely associating with others for the common advancement of political beliefs and ideals."  The jury returned a verdict in favor of the defendants on this claim, and Collins has not sought review of the jury's verdict in this regard.

[2]The record indicates and Collins's brief acknowledges that this was an official duty that was specifically recognized and

2

was authorized to buy the uniforms and equipment (known as "disposables") from local sporting goods vendors and to then make them available for purchase by the playground's patrons. Public funds were not used to purchase disposables. Instead, Collins purchased the disposables on open account or with his own private funds. If the patrons failed to pay for the uniforms or equipment, Collins could seek reimbursement from the Harahan Parents Club, the playground's booster club.[3]

During the summer of 1991, Collins began a summer camp program at the playground. This program was the first such event the City of Harahan had ever sponsored at this facility. Collins hired local teacher Sherrie Stanton to help him run the summer camp. Among her many duties, Stanton was responsible for registering participants, supervising camp counselors, and collecting the tuition from camp participants. After Stanton collected the campers' tuition, she turned it over to Collins. The summer camp raised over $29,000 for the City of Harahan in 1991.

B

On May 3, 1992, Theresa Smithey, an assistant clerk for the City of Harahan, told Harahan Chief of Police John Doyle of her suspicions that Collins was stealing money from the City. Smithey

---

required by the City of Harahan.

[3]Collins's brief states that as of January 1, 1991, the Harahan Parents Club refused to reimburse him for shortfalls in connection with the purchasing of disposables.

further said that, in connection with the summer camp, Collins was not turning in any supporting documents with the various checks collected. Thus, Smithey said, it was very difficult for the city to determine whether all of the money was being turned over. Additionally, Smithey told Collins that between twenty-six and twenty-eight campers' checks were not deposited into the summer camp account. Instead, the checks were being diverted to another account.

Following the talk with Smithey, Doyle ran Collins's name through the police computer. He discovered that Collins had an outstanding arrest warrant in Texas for passing bad checks. This warrant was thought to lend support to Smithey's allegations, and Doyle decided to bring the matter to the attention of Mayor Ferrara.

Doyle asked Ferrara if he had ever received any summer camp records from Collins. Ferrara had not, despite numerous requests. Ferrara said that he had begun an informal internal investigation of Collins as a result of calls he had received from local suppliers regarding outstanding recreation invoices. Mayor Ferrara also told Doyle about an unauthorized account that Collins opened on December 19, 1991, and closed on March 7, 1992, at the Whitney Bank under the name "Harahan Dixie Youth Baseball."

On May 7, 1992, Barbara Butera, the city clerk responsible for records, gave a formal statement to the police department, stating that Collins was not following proper accounting procedures, when

4

turning over to the City money collected from playground patrons. Additionally, Butera gave the police copies of two letters she had written to the mayor, noting Collins's failure to follow City procedure.

Further investigation revealed that a number of checks written by playground patrons were cashed at a local Old Hickory Food Store. Other checks were deposited into an account in the name of Collins & Associates. These funds were used to cover fourteen NSF checks Collins had written on this account in the days prior to their deposit--one of which resulted in the issuing of an arrest warrant for Collins.

Doyle also learned of several unpaid invoices from Staples Sporting Goods ("Staples"), a company that supplied merchandise to the Harahan Recreation Department. The unpaid balance on the invoices were for $1,089.99, $195.00, and $196.02. Doyle further discovered that Collins had purchased several items for the Department from Rooster's Team and Athletic Goods ("Rooster's") and from Collins & Associates. Additional investigation revealed that Collins had been employed by Rooster's for some time and that according to court records he owned a 10% interest in the company. Furthermore, the investigation established that Collins did not have authority from the City to purchase any goods from Collins & Associates.

C

5

On July 21, 1992, Doyle, concluded that probable cause existed to indict Collins for public contract fraud and theft.  He then turned the case over to the Criminal Investigation Division of the district attorney's office and requested that a grand jury be convened.  On December 5, 1992, Bob Long, supervising assistant district attorney in the Screening Division, prepared a Bill of Information[4] charging Collins with two counts of public contract fraud in violation of Louisiana Revised Statute section 14:140[5] and

---

[4]The Bill of Information charged Timothy Collins with the following:

Count 1). . . between January 2, 1992 through January 7, 1992 with force of arms, in the parish aforesaid, and within the jurisdiction of the Twenty-Fourth Judicial District Court of Louisiana, in and for the Parish aforesaid, violated R.S. 14:140 in that he did, while employed as director of recreation for the City of Harahan, Louisiana, use that position to secure the expenditure of city funds to purchase sporting goods from Collins & Associates, a business which he is the owner.

Count 2) And the District Attorney further gives the Court to understand and be informed that January 10, 1992 through April 20, 1992 the said Timothy Collins violated R.S. 14:140 in that he did, while employed as director of recreations for the City of Harahan, Louisiana, use that position to secure the expenditure of city funds to purchase sporting goods from Roosters Team and Athletic Goods, Inc., a Corporation of which he is a stockholder.

Count 3) And the District Attorney further gives the Court to understand and be informed that April 1, 1991 through November 30, 1991 the Said Timothy Collins violated R.S. 14:67 in that he did commit theft of funds valued at in excess of $500.00, from City of Harahan.

Louisiana Revised Statute section 14:140 provides in relevant part:

A.   Public contract fraud is committed:

one count of theft of city funds in violation of Louisiana Revised Statute 14:67.[6] An arrest warrant was issued for Collins. Following Collins's arrest, he posted bond and was released.

The case against Collins was assigned to Assistant District Attorney Wicker to prepare and try. After reviewing the evidence, Wicker amended the Bill of Information to include seven counts. The first two counts for public contract fraud remained the same as in the first Bill. Wicker, however, expanded the third count for theft,[7] and added additional counts for unauthorized use of

_____

> (1) When any public officer or public employee shall use his power or position as such officer or employee to secure any expenditure of public funds to himself, or to any partnership of which he is a member, or to any corporation of which he is an officer, stockholder, or director.

La.Rev.Stat.Ann. § 14:140 (West 1999).

Louisiana Revised Statute section 14:67 provides in relevant part:

> A. Theft is the misappropriation or taking of anything of value which belongs to another either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.

La.Rev.Stat.Ann. § 14:67 (West 1999).

[7]Count Three was amended as follows:

Count 3) And the District Attorney further gives the Court to understand and be informed that between April 1, 1991 and on or about November 30, 1991 the said Timothy Collins violated R.S. 14:68 in that he did commit the unauthorized use of sporting goods owned by Staples

7

additional sporting goods, theft of additional money, public payroll fraud, and general malfeasance. Counts Four through Seven of the Amended Bill of Information were subsequently dismissed or not prosecuted due to financial and time constraints on the district attorney's office.

On January 15, 1993, the Amended Bill of Information was presented to Louisiana District Court Judge Porteous for a determination of whether the charges were supported by probable cause. After examining the evidence, Judge Porteous found that sufficient probable cause existed for the prosecution to go forward. At trial, Collins was acquitted of all charges.

D

On February 22, 1995, Collins filed this section 1983 action against Doyle individually and in his official capacity as the Chief of Police for the City of Harahan, and against the City of Harahan alleging malicious prosecution and defamation.[8] He also alleged state law claims against Doyle for malicious prosecution, defamation, and abuse of process. The case was tried between October 21, 1997 and October 31, 1997. The jury returned a verdict against Doyle and the City of Harahan finding them liable under

---

Sporting Goods valued at $1,877.90 and of sums of money in excess of $1,000 given to him by parents and coaches of various team members playing ball through Harahan Playground in payment for said sporting goods he obtained from Staples Sporting Goods.

[8]The complaint also named Century Indemnity Company, the City of Harahan's insurer, as a defendant.

section 1983 for malicious prosecution and defamation. The jury also found them liable on the state law claims. The jury awarded Collins $597,578 in compensatory damages[9] and $300,000 in punitive damages against Chief Doyle individually.[10] On June 29, 1998, the City and Doyle, in his official capacity as Chief of Police, filed a timely notice of appeal. On July 6, 1998, Doyle, in his individual capacity, filed a timely notice of appeal.

## II

### A

We begin by addressing the City of Harahan's liability for the actions of Chief Doyle. The law is well settled that in order to sustain a claim for relief under 42 U.S.C. § 1983 against a municipal defendant, the plaintiff must show the existence of an officially adopted policy or an established custom of the municipality that causes injury and a causal connection between that policy or custom and the deprivation of a constitutional right. See Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978); Flores v. Cameron County, Texas, 92 F.3d 258, 263 (5th Cir.

---

[9]The jury awarded Collins $200,000 for loss of income and earning capacity, $300,000 for emotional distress, $50,000 for loss of reputation, and $47,578 for costs and attorney's fees.

[10]The court entered an order dated March 26, 1998, stating that because the jury found that the actions of Chief Doyle were "intentionally fraudulent and with knowledge of falsity and reckless disregard," the City's liability for those actions are not covered under its policy with Century Indemnity Company because they fall within the policy's exclusion for "fraudulent acts." Thus, the court rendered judgment in favor of Century, denying coverage.

1996). The policies that give rise to section 1983 liability must "be set by the government's lawmakers, or by those whose edicts or acts may fairly be said to represent official policy." McMillian v. Monroe County, Alabama, 520 U.S. 781, 785 (1997). In identifying those officials or governmental bodies who speak with final policymaking authority for the local government, the court must focus on the specific "action alleged to have caused the particular constitutional or statutory violation at issue" and determine whether the party responsible for that action is the final policymaker in that particular area. Id.

In determining whether the party responsible for the alleged violation is the final policymaker, courts must consider "[S]tate law (which may include valid local ordinances and regulations) [which] will always direct a court to some official body that has the responsibility for making or setting policy in any given area of a local government's business." See Flores, 92 F.3d at 263 (citing City of St. Louis v. Praprotnik, 485 U.S. 112, 125 (1988)). Although it is clear that the "simple labeling" of a state official will not automatically be conclusive, in determining "who clearly makes [municipal] policy, . . . our understanding of the actual function of a governmental official, in a particular area, will necessarily be dependent on the definition of the official's function under relevant state law." McMillian, 520 U.S. at 786. Thus, the relevant federal question can be answered only after considering the provisions of state law that define the [official

10

duties]."  Id. (quoting Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 430 n.5 (1997).  Consequently, the identification of those officials whose decision represent the official policy of the local government unit is itself a legal question to be resolved by the trial judge" and is thus subject to de novo review.  Flores, 92 F.3d at 263 (citing Jett v. Dallas Ind. Sch. Dist., 491 U.S. 701, 737 (1989)).

Collins argues that Doyle was the chief policymaker for Harahan for the purposes of Monell liability because he "personally conducted the investigation and personally filed the C.I.D. Report."  As a result, Collins argues, "Harahan is liable because Doyle, as Chief of Police, personally maliciously prosecuted Collins thereby depriving Collins of his Fourth Amendment right to be free from malicious prosecution."  Alternatively, Collins argues that even if pursuant to Louisiana law the sheriff is not the chief policymaker for purposes of initiating criminal proceedings, in this case, the district attorney was not an "impartial intermediary" and thus the city is subject to Monell liability.

The defendant counters by arguing that "while Doyle might be a policymaker for Harahan, he is not the policymaker for Harahan concerning the action alleged to have caused the particular constitutional violation at issue here."  Although the defendant recognizes "that Doyle was the official policymaker for the City for law enforcement," in analyzing the City's Monell liability for a claim based on malicious prosecution, Doyle, under Louisiana law,

11

lacked "the authority to institute the criminal proceeding against the plaintiff."  Thus, the defendant argues, because, under Louisiana law, "Doyle has no power over the institution of prosecution, he cannot create a policy for Harahan concerning the institution of prosecution."

We thus begin our inquiry by considering the statutory authority of Chief Doyle.  Louisiana Revised Statute section 423 provides in relevant part:

> The marshal shall be the chief of police and shall be ex officio a constable.  He shall have general responsibilities for law enforcement in the municipality, and shall be charged with the enforcement of all ordinances within the municipality and all applicable state law.  He shall perform all other duties required of him by ordinances.

La.Rev.Stat.Ann. § 423 (West 1999).  The parties stipulated to the fact that Doyle was the official policymaker for the city of Harahan for law enforcement.  However, this stipulation does not specifically address the question presented by this appeal, that is, whether Doyle has the authority to initiate criminal proceedings and whether he is the official policymaker for those purposes.  Article 61 of the Louisiana Code of Criminal Procedure states:

> Subject to the supervision of the attorney general, as provided in Article 62, the district attorney has entire charge and control of every criminal prosecution instituted or pending in his district, and determines whom, when, and how he shall prosecute.

La. Code Crim. Pro. art. 61 (West 1999).  The Code makes it clear that the district attorney, not the sheriff, has the complete

12

authority to determine who, when, and how criminal proceedings will be brought against. Thus, relying on the strict dictates of Louisiana law, it seems indisputable that Doyle is not the official chief policymaker for the city of Harahan for purposes of Monell liability.

The plaintiff, however, argues that because of the integral role Doyle played in the prosecution of this case, the district attorney was not an "impartial intermediary" and thus Doyle acted in the capacity of a policymaker for purposes of Monell liability. We have recognized that when, pursuant to established custom, the police and the district attorney's office have a relationship such that the district attorney does not exercise independent judgment in prosecuting cases, the sheriff will be considered a policymaker for such purposes. See Hale v. Fish, 899 F.2d 390, 401 (5th Cir. 1990); Hand v. Gary, 838 F.2d 1420 (5th Cir. 1988). Here, however, other than the Collins's conclusionary assertions that the district attorney was not acting as an impartial intermediary, he has failed to point to any evidence that places Doyle in a prosecutorial role beyond the customary duties of law enforcement officers.

The record contains uncontroverted evidence supporting the municipality's contention that the district attorney's office had complete discretion to decide whether to initiate and pursue charges against Collins. On July 21, 1992, Doyle expressed his concerns regarding Collins's illegal activities to the Criminal Investigation Division of the district attorney's office and

13

requested a grand jury be convened.  Bob Long, the supervising assistant district attorney in the Screening Division, reviewed all of the evidence presented by Doyle in support of his suspicions. He then discussed the case with Assistant District Attorney Wicker. After a complete review of the evidence, on December 3, 1992, the district attorney issued a Bill of Information charging Collins. Between July 21 and December 3, the only contact that Doyle had with the district attorney's office was in providing a videotape as additional evidence and in sending two letters.[11]  The record does not reflect that Doyle took any steps that "pressured" the District Attorney's office into bringing the charges against Collins.  To the contrary, the record reflects that the district attorney acted within the bounds of an "independent intermediary."  Consequently, because Doyle did not act in the role of an official policymaker in the decision to prosecute Collins, he cannot be considered a policymaker for the purpose of Monell liability.

---

[11]The first letter dated August 5, 1992, and addressed to the Honorable John Mamoulides, district attorney for the Parish of Jefferson, was sent by Doyle in response to numerous requests he had received from public officials, including the mayor, regarding the status of the case.  The second letter, dated September 9, 1992, and also addressed to the Honorable John Mamoulides, was characterized by Doyle as "common" and extended the further assistance of the sheriff's department to the district attorney's office if it felt the underlying facts of the Collins's case required further development.  Neither letter contained any language regarding Doyle's subjective belief about Collins's guilt, or attempted to pressure the district attorney to bring charges against Collins.

14

In sum, because we hold as a matter of law that Doyle was not the official policymaker for purposes of initiating the prosecution against Collins, the City of Harahan, and Doyle, in his official capacity, cannot be held liable under section 1983 for these actions.[12]  Thus, to the extent that the judgment of the district court imposes liability upon the City of Harahan and upon Doyle in his official capacity, it is reversed.

B

We now turn to Collins's claims against Doyle in his individual capacity.  Collins argues that because Doyle lacked probable cause to believe that he was guilty of public contract fraud and theft, his actions constitute malicious prosecution.[13]

---

[12]In Hafer v. Melo, 502 U.S. 21 (1991), the Supreme Court held that "[s]uits against state officials in their official capacity . . . should be treated as suits against the State."  Id. at 25 (citing Kentucky v. Graham, 473 U.S. 159, 166 (1985)); see also, Brooks v. George County, Mississippi, 84 F.3d 157, 165 (5th Cir. 1996)(stating that a "suit against [the] Sheriff in his official capacity is treated as a claim against George County").  The Hafer Court held, when state officers are sued for damages in their official capacities, they "are not 'persons' for purposes of the suit because they assume the identity of the government that employs them."  Hafer, 502 U.S. at 362.  Therefore, because Collins's claims against the City of Harahan fail, his claims against Doyle in his official capacity likewise fail.

[13]Although it is clear that the Fourteenth Amendment will not provide a basis for a section 1983 claim for malicious prosecution, see Albright v. Oliver, 510 U.S. 266 (1994), we need not reach the question of whether the Fourth Amendment can provide such a basis to decide this case.  Even assuming the Fourth Amendment provides a basis for a section 1983 claim for malicious prosecution, Collins's claim fails as a matter of law.  Thus, because it is not clear whether the Fourth Amendment will support a section 1983 malicious prosecution claim, we reserve it for another day. Compare Eugene v. Alief Indep. Sch. Dist., 65 F.3d 1299, 1305 (5th

The elements of a federal claim for malicious prosecution under section 1983 are:

1)  criminal action commenced against the plaintiff;
2)  that the prosecution was caused by the defendants or with their aid;
3)  that the action was terminated in the plaintiff's favor;
4)  that the plaintiff was innocent;
5)  that the defendants acted without probable cause;
6)  that the defendant acted with malice; and
7)  that the criminal proceedings damaged the plaintiff.

Kerr v. Lyford, 171 F.3d 330, 340 (5th Cir. 1999)(citing Hayter v. City of Mount Vernon, 154 F.3d 269, 275 (5th Cir. 1998).  Under Louisiana law, the elements for a claim of malicious prosecution are similar.[14]  See Stark v. Eunice Superette, Inc., 457 So.2d 291, (La.Ct.App. 3d Cir. 1984)(quoting Jones v. Soileau, 448 So.2d 1268 (La. 1984)).  If the plaintiff fails to meet his burden with

---

Cir. 1995)(stating that the Fourth Amendment will provide a sufficient basis for a section 1983 claim for malicious prosecution), with Cook v. Houston Post, 616 F.2d 791, 794-95 (5th Cir. 1980)(holding that "under the Constitution, appellants have no claim cognizable under § 1983" for malicious prosecution), and Kerr v. Lyford, 171 F.3d 330, 342-343 (5th Cir. 1999)(Jones, J., specially concurring)(stating that considerable doubt exists as to whether the Fourth Amendment will provide a constitutional basis for a malicious prosecution claim).

[14]To sustain a claim for malicious prosecution under Louisiana law, the plaintiff must establish:
(1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to plaintiff.
Stark v. Eunice Superette, Inc., 457 So.2d 291, (La.Ct.App. 3d Cir. 1984)(quoting Jones v. Soileau, 448 So.2d 1268 (La. 1984)).

respect to any one element of his claim for malicious prosecution, his claim fails.  See Kerr, 171 F.3d at 340.

We focus first on the plaintiff's burden of establishing that the defendant lacked probable cause to initiate the underlying proceeding.  The plaintiff must adduce sufficient evidence to demonstrate that, at the time the charges were initiated, the defendant lacked sufficient "knowledge that would warrant a prudent person's belief that the person arrested had already committed or was committing a crime."  Duckett v. City of Cedar Park, Texas., 950 F.2d 272, 278 (5th Cir. 1992).  Probable cause requires "substantially less than that sufficient to support a conviction--i.e., proof beyond a reasonable doubt--but more than bare suspicion."  United States v. Muniz-Melchor, 894 F.2d 1430, 1438 (5th Cir. 1990).  Further, the evidence must be "viewed in light of the observations, knowledge, and training of the law enforcement officers involved."  Id.

In Illinois v. Gates, 462 U.S. 213 (1983), the Supreme Court adopted a "totality of the circumstances test" to determine probable cause in a particular circumstance.  Id. at 241.  The Court reasoned that "probable cause is a fluid concept--turning on the assessment of probabilities in particular factual contexts--not readily, or even usefully, reduced to a neat set of legal rules."  Id. at 232.  Instead, the Court held, in making a determination regarding the existence of probable cause, courts should embark on a "practical, common-sense decision whether, given all of the

17

circumstances . . . there is a fair probability that" the person who has been charged committed the crime charged therein.  Id. at 238; see also Gladden v. Roach, 864 F.2d 1196, 1199 (5th Cir. 1989)(holding that a police officer has probable cause if, at the time of the arrest he is in possession of such facts that would warrant a prudent person to believe that the person charged committed the crime).  In making such a determination, the subjective beliefs and motivation of the charging officer, even if his conduct was malicious or otherwise improperly motivated, are irrelevant.  Anderson v. Creighton, 483 U.S. 635, 641 (1987). Further, "to the extent that the facts undergirding the probable cause determination are undisputed, [the court] may resolve the issue as a matter of law."  Kerr v. Lyford, 171 F.3d 330, 340 (5th Cir. 1999)(citing Blackwell v. Barton, 34 F.3d 298, 305 (5th Cir. 1994); see also Dougherty v. Szivos, 209 F.2d 935, 936 (5th Cir. 1954)(stating that "[i]t is well recognized that, in an action for malicious prosecution, the question of what circumstances amount to probable cause is a question of law for the trial court").

Our review of the record convinces us that Collins has not adduced evidence sufficient to carry his burden of establishing that Doyle lacked probable cause when he alerted the district attorney's office of his conclusion that Collins had violated Louisiana law.[15]  Indeed, the evidence demonstrates that each of the

_____

[15]Our circuit has not had an opportunity to address the issue of whether a showing of probable cause with respect to one count of

18

three counts of the Amended Bill of Information that were initiated and prosecuted with the assistance of Doyle were supported by probable cause.[16] Thus, we conclude, as we must, that, as a matter of law, Collins's claim fails. See Dougherty, 209 F.2d at 937 (holding that "the plaintiff has the burden of establishing that the defendant acted without probable cause," and the failure of the plaintiff to meet this burden will result in the entry of a judgment as a matter of law in favor of the defendant).

Count One of the Amended Bill of Information charged Collins with a violation of Louisiana Revised Statute 14:140, "in that he did, while employed as director of recreation for the City of

---

an indictment that charges various criminal acts arising out of the same transaction or occurrence is sufficient to defeat a claim of malicious prosecution as to all of the charges stemming from those events. This issue, however, has been addressed by at least one of our sister circuits. In Posr v. Doherty, 944 F.2d 91 (2d Cir. 1991), the Second Circuit held:

> [W]e should not allow a finding of probable cause on [one charge] to foreclose a malicious prosecution cause of action on charges requiring different, and more culpable, behavior. [If that were the rule,] an officer with probable cause as to a lesser offense could tack on more serious, unfounded charges which would support a high bail or a lengthy detention, knowing that the probable cause on the lesser offense would insulate him from liability for malicious prosecution on the other offenses.

Id. at 100. The circumstances of this case do not require us to resolve this question. Thus, we expressly reserve it for another day.

[16]It is important to note that we do not hold that the evidence supporting Counts One through Three of the Amended Bill of Information was sufficient to convict Collins of the crimes charged therein. Rather, we hold only that probable cause existed to charge Collins with those crimes.

19

Harahan, Louisiana, use that position to secure the expenditure of city funds to purchase sporting goods from Collins and Associates,[17] a business which he is the owner." This conduct was alleged to have occurred between January 2, 1992 and January 7, 1992.

That Doyle had a basis for probable cause before initiating charges under Count One was confirmed by Collins's own testimony at trial. Collins admitted that he had purchased $150.45 worth of T-shirts for Kayman Company, a sporting goods wholesaler who did not sell directly to the public. The shirts were purchased on the Collins & Associates' account. He admitted that the T-shirts were purchased for distribution during a baseball camp he was conducting during the Christmas holidays in 1991. Collins further testified that the T-shirts were distributed to camp participants, and that a portion of the registration fee for the camp was used to pay for the shirts.

Additionally, Collins testified that, to cover the cost of the T-shirts, he wrote a check payable to himself from a bank account he had opened. He admitted that, without the knowledge or consent of the City of Harahan, he had opened the account to deposit the registration fees collected for camp patrons. The check was then deposited into the Collins & Associates' commercial checking account. It is important to note that Doyle was aware of the fact that Collins did not have permission to conduct any business on

---

[17]Collins and Associates is not a legal entity. It is the name under which Collins conducted business.

behalf of the City of Harahan with Collins & Associates. This fact was also confirmed by Collins's testimony.

These record facts make clear that probable cause existed for Doyle to believe that Collins was conducting City business with an organization in which he had a proprietary interest. It is undisputed that Collins conducted business in the name of Collins & Associates. As we have noted, Collins bought a number of T-shirts from a wholesaler in the name of Collins & Associates, which were later distributed during a City-run baseball camp and paid for from proceeds collected from the camp patrons. These facts were known by Doyle prior to the initiation of criminal proceedings against Collins. Thus, Collins has failed to demonstrate that Doyle lacked probable cause to believe that he committed the crime he was charged with in Count One of the Amended Bill of Information.

Count Two of the Amended Bill of Information charged Collins with violating the same section of the Louisiana Code for spending "city funds to purchase sporting goods from Rooster Team and Athletic Goods, Inc., a Corporation of which he is a stockholder." Once again, the undisputed evidence confirms the facts alleged by Doyle prior to the initiation of this charge against Collins. The evidence established that Collins owned "ten shares" in Rooster's. This evidence came from Collins's own sworn statements made to the United States Bankruptcy Court in 1989. In his schedule of assets filed with the court, Collins admits to owning "10 shares of stock

in Rooster's Team & Athletic Goods." Further, Collins failed to introduce any evidence at trial establishing that he had transferred his interests in Rooster's prior to 1991.

Additionally, four bills of sale were introduced into evidence that confirmed Rooster's made four sales during the relevant period of time to the Harahan Recreation Department in the amounts of $2,000, $1,362.50, $191.40, and $427.10. This evidence was bolstered by three "Request Forms" for funds from the Department of Recreation of Harahan to pay Rooster's for recreational equipment that was purchased. These request forms were each signed by Collins and were for $2,000.00, $1,362.50, and $191.40, respectively.

Collins does not dispute that he made the purchases in question from Rooster's. He argues, however, that he did not own any stock or proprietary interest in Rooster's. He offers evidence of the fact that the Louisiana Secretary of State did not have any records indicating that Collins owned 10 shares of stock in Rooster's. He also testified that he is no longer employed by Rooster's. Collins does admit, however, that on September 3, 1992, Rooster's purchased a stock related interest from him in the company for $2,500.

We therefore think that it is clear that Doyle had probable cause to believe that Collins held a proprietary interest in Rooster's, and that he was conducting business on behalf of the city with Rooster's prior to the initiation of this charge against

22

Collins. We must conclude, therefore, that Collins has failed to meet his burden of proving a prima facie case of malicious prosecution, and that his claim fails as a matter of law.

Count Three of the Amended Bill of Information charged Collins with a violation of Louisiana Revised Statute 14:68, "in that he did commit the unauthorized use of sporting goods owned by Staples valued at $1,877.90 and of sums of money in excess of $1,000 given to him by parents and coaches of various team members playing ball through Harahan Playground in payments for said sporting goods he obtained from Staples." A review of the record shows that the charge was supported by probable cause.

The record indicates that prior to initiating charges against Collins, Doyle was aware that Collins was listed as the buyer and his home address as the billing address on unpaid invoices totaling over $1,806 for merchandise purchased from Staples.[18] The uncontradicted testimony of Collins's own witness at trial confirms these facts. Moreover, although a formal proceeding had not been undertaken by Staples to recover the unpaid balance, Collins's own witness testified that Staples had spoken to Collins on numerous occasions prior to the filing of these criminal charges, and that at some point Collins stopped returning the phone calls from Staples.

_____

[18]The record indicates that invoices were sent to Collins on January 1, 1992, and February 1, 1992, indicating that he owed Staples Sporting Goods in excess of $1,806 for sporting goods purchased for the playground.

Doyle was also aware that Collins, by depositing and cashing various checks, had failed to follow recognized informal city procedures regarding payments received from playground patrons, which funds were to be turned over to the City. Specifically, he was aware of the fact that Collins had deposited checks written by patrons of the playground to cover the cost of many of the items purchased from Staples directly into his personal checking account and that he had cashed patron's check for these goods at the Old Hickory Food Store in Harahan.[19] Collins argues that some of these checks were for reimbursements for disposables. Still, that does not excuse him of the fact that a large number of the checks were personally deposited into his account, or personally cashed at the Old Hickory Food Store and that payment was not made to Staples for the goods after the passage of over one year. This evidence, together with the fact that Doyle was aware that Collins had bounced a series of checks during this time period, and that the checks deposited into his account were used to cover these NSF checks, provided probable cause for him to believe that Collins had

---

[19]The record contains undisputed evidence that Chief Doyle was aware of the fact that Collins had cashed numerous checks written by playground patrons for athletic equipment at the Old Hickory Food Store in Harahan prior to the initiation of charges against him. It is irrelevant whether the checks were payable to "Cash" or "The City of Harahan." The facts that are relevant are that the checks were written by the patrons for athletic equipment, that Collins cashed the checks, that he did not turn the money over to the City or to Staples, and that he otherwise made no accounting to the City.

24

committed the crime charged.[20]  Consequently, because Collins has failed to demonstrate that Doyle lacked probable cause to support this count, his federal and state malicious prosecution claims fail.

In sum, Collins has failed to demonstrate that Doyle lacked probable cause to believe that Collins had committed any of the crimes charged in the Amended Bill of Information.  Consequently, Collins's federal and state law malicious prosecution claims fail as a matter of law.[21]  Thus, the judgment against Doyle, in his individual capacity, based on malicious prosecution is reversed.

C

(1)

We now turn to Collins's arguments in support of the jury's verdict against Doyle, in his individual capacity, based on defamation.  We begin by addressing his section 1983 claim.

---

[20]It should be noted that Collins's own testimony at trial confirmed the fact that numerous checks written by playground patrons were deposited into his account to cover several NSF checks.  At trial Collins testified as follows:
Q.   What was the money used for in the [Collins & Associates] account?
A.   The money that was deposited into the account?
Q.   Yes.
A.   It was put into my account, hopefully to stop some of the NSF charges.
Q.   NSF charges were for personal expenses?
A.   Yes, they were.

[21]Because we hold that Collins' malicious prosecution claims fail as a matter of law, it is unnecessary to address the question whether Sheriff Doyle is entitled to qualified immunity.

25

The Supreme Court in <u>Paul v. Davis</u>, 424 U.S. 693 (1976), stated unequivocally that defamation that does not result in the deprivation of "a life, liberty, or property interest recognized and protected by state law or guaranteed by one of the provisions of the Bill of Rights that has been incorporated" is not actionable under section 1983. <u>Id.</u> at 710-711; <u>see also</u>, <u>Doe v. State of Louisiana</u>, 2 F.3d 1412, 1421 (5th Cir. 1993)(stating that defamation is not actionable under section 1983 unless it leads to the deprivation of a constitutionally guaranteed right). This doctrine has become known as the "stigma plus infringement test" and requires the plaintiff to prove that the actions of the defendant resulted in the "deprivation of a protected interest." <u>Vander Zee v. Reno</u>, 73 F.3d 1365, 1369 (5th Cir. 1996). If the plaintiff fails to demonstrate the deprivation of a protected interest resulting from the defendant's actions, his claim fails as a matter of law. <u>Id.</u>

In his appellate brief, Collins states that "the defamatory statements made by Doyle--the false criminal charges--resulted in his prosecution in violation of his constitutional right to be free from malicious prosecution." This is the lone protected interest cited by Collins in support of his claim for defamation under section 1983.[22] Assuming the deprivation of such a right can

---

[22]There is some indication in the trial record and in his appellate brief that Collins introduced evidence of the fact that he has lost employment opportunities as a result of the actions of Doyle in an attempt to establish a constitutionally cognizable

26

support a claim for defamation under section 1983, the actions of Doyle, as we have previously concluded, were supported by probable cause. Consequently, Collins has failed to satisfy the infringement portion of the "stigma plus" test. Assuming he has been defamed, he has not shown that the defamation infringed on a constitutionally protected interest. Thus, Collins's federal defamation claim fails as a matter of law.

(2)

We now turn to the defamation claim based on state law. Essentially for the same reasons that Collins's malicious prosecution claims fail, his defamation claim based on state law fails as a matter of law. It is a long-standing canon of Louisiana tort law that "a plaintiff cannot prevail in an action for defamation which is combined with one for malicious prosecution where he fails to prove malicious prosecution; and the two caused are merged into one." Watson v. Church's Fried Chicken, Inc., 527 So.2d 979, 981 (La.Ct.App. 4th Cir. 1988)(citing Dearmond v. St.

---

injury. The Supreme Court, however, has expressly rejected the existence of a constitutionally cognizable injury for the damage to the reputation of the plaintiff resulting in the loss of future employment opportunities. See Seigert v. Gilley, 500 U.S. 226, 234 (1991)(stating that any damages flowing from an injury to the plaintiff reputation in connection with his employment which result in the impairment of his future ability to gain future employment, "may be recoverable under state tort law, but is not recoverable in a [federal civil action]" because such an injury does not flow from the violation of a constitutionally protected right). Consequently, this evidence will not be considered in determining whether the actions of Doyle resulted in the depravation a constitutional right sufficient for Collins to meet his burden under Paul v. Davis, 424 U.S. 693 (1976).

Amant, 4 So. 72 (La. 1888) & Enders v. Boisseau, 27 So. 546 (La. 1900)).  In Dearmond, the Louisiana Supreme Court explained the rule as follows:

> The defamation of character alleged consists in merely making public statements that plaintiff was guilty of the crime for which he was arrested and prosecuted upon the affidavit of the defendant.  Manifestly the slander is merged in the prosecution, and if the prosecution is not actionable, neither is the slander.

Dearmond, 4 So. at 72.  Thus, because Collins has failed to prove that the actions of Doyle rose to the level of malicious prosecution, his state law defamation claim merges with his malicious prosecution claim and fails as a matter of law.

D

Finally, we address the jury's verdict relating to Collins's abuse of process claim against Doyle, which is based on state law. In Vasseur v. Eunice Superette, Inc., 386 So.2d 692 (La.Ct.App. 3d Cir. 1980), the Louisiana court recognized a cause of action for the common law tort of abuse of process.  The court held:

> There seems to be no reason not to recognize a plaintiff's right to recover for damages caused by a defendant's abuse of process when the facts so warrant. Unlike malicious prosecution, however, where several elements [must be proven] . . . there are only two essential elements of abuse of process. . . . The essential elements of abuse of process, as the tort has developed, have been stated to be: First, an ulterior purpose, and second, a wilful act in the use of the process not proper in the regular conduct of the proceeding.

Id. at 695.

28

The first element of an abuse of process claim, that of ulterior purpose, "is similar to the concept of 'malice,' but is a much more demanding test which would not be met by a showing of lack of knowledge or other technical types of malice, but which is only met when the officer is acting for a specific purpose not authorized by law." Taylor v. State of Louisiana, 617 So.2d 1198, 1205 (La.Ct.App. 3d Cir. 1993). The second element, that of the improper use of process, requires "a failure to comply with the proper procedures or rules set out by law for conducting official actions." Id. at 1205-06. The touchstone of an abuse of process claim is whether the actions of the defendant "involves the misuse of a process already legally issued whereby [the defendant] attempts to obtain some result not proper under the law." Id.

Assuming Collins's newly alleged ulterior purpose is true-- that Doyle wanted him removed from the position of Director of Recreations for the City of Harahan so he could give the job to a friend of his wife--the record still lacks any evidence to support a claim that the process was used in an improper manner. As we continue to note, the record indicates that probable cause existed at the time Collins was charged with public contract fraud and theft. Additionally, the record indicates that following Collins's arrest, the matter was brought to trial in a timely manner. The only purpose of the trial that is supported by the record was to obtain a criminal conviction. There is no evidence that Doyle

29

misused the criminal process once it was instituted. Thus, Collins's abuse of process claim fails as a matter of law.

III

We sum up: Collins has failed as a matter of law in his section 1983 malicious prosecution claim to demonstrate that Chief Doyle was the chief policymaker for purposes of initiation and prosecuting him for the public contract fraud and theft. Thus, the City of Harahan has no <u>Monell</u> liability for his actions. Further, Collins has failed to carry his burden to demonstrate that Chief Doyle lacked probable cause to refer the case to, and to assist, the district attorney's office in its prosecution. Thus, both Collins's federal and state law malicious prosecution claims against Doyle fail. We hold that Collins has failed to establish either a state or federal cause of action against Doyle based on defamation. Finally, we hold that the abuse of process claim cannot be sustained.

Thus, the judgment of the district court is REVERSED and the damage award is VACATED, and the case is REMANDED for entry of judgment dismissing the complaint in all respects as to all defendants.

REVERSED, VACATED, and REMANDED.